## CHARLES GWYNN *vs.* JONES' LESSEE.—*June*, 1830.

By the act of 1766, ch. 14, sec. 2, conveyances to pass an estate in lands for above 7 years, are required to be enrolled within six months from their date. The enrolling officer is directed immediately, upon the receipt of any such deed, to endorse thereon the time of his receiving it—to enrol it, and, "on the back of every such deed, in a full, legible hand, make a certificate of such enrolment, and the time of making it." An original deed of that character, cannot be read as evidence of title, without offering proof of the hand-writing of the officer who endorsed it.

The common law restrains the assignment of an entry for a condition broken, where, after the forfeiture incurred, the estate may continue ; but it allows it where the violation of the condition puts an end to the estate of the particular tenant.

It is a case of constant occurrence, where a grantor, having a right of entry on land, conveys it to another, and therewith, necessarily, the power to maintain an Ejectment for it.

Mere continuance in a possession, which originated under a lease from the Lord Proprietary of this State, created in conformity to the act of 1704, ch. 16, sec. 5, after the reversioner is entitled to re-enter for a condition broken, and before the original term had expired by lapse of time, is not adverse to the reversioner's right to re-enter, nor will limitations begin to run under such circumstances.

Where a possession commenced rightfully, and with the consent of the owner, nothing is to be presumed to make it adverse. Mere holding over, after the term ended, is not evidence of an adverse possession ; and the possessor will be regarded as the tenant at will of the landlord, unless he can show that, since the expiration of the lease, he has held forcibly, or has acquired a title paramount to that under which possession was originally taken.

APPEAL from *Harford* County Court.

This was an action of *Ejectment,* brought by the appellee (the plaintiff in the Court below) against the appellant, (the defendant in that Court) for a tract of land called *Expectation.* The defendant pleaded not guilty, and took defence on warrant. Plots were made and returned.

1. At the trial, the plaintiff proved to the jury, that one *James Norris* was seized in fee of the tract of land called *Expectation*, in the declaration mentioned, on the 9th of June, 1774, and also gave in evidence the following writ of *ad quod damnum,* the inquisition, and return thereon, with

the lease of that date thereon, made to one *Thomas Saunders,* which said lease, and other proceedings, under the *ad quod damnum* aforesaid, were regularly attested, under seal, and are as follows: "*Maryland ss. Frederick,* absolute lord and proprietary of the provinces of *Maryland* and *Avalon,* lord baron of *Baltimore,* &c. To the Sheriff of *Baltimore* county, greeting: We command you, that by the oaths of twelve honest and lawful men of the county, by whom the truth of the matter may be better known, you diligently inquire if it be to the damage of us, or others, if we grant unto *Thomas Saunders,* of *Baltimore* county, twenty acres of land, lying on a run of water called *Winter's* Run, in *Baltimore* county, aforesaid, viz: ten acres on one side of such run, and ten acres on the other side of such run of water, together with liberty to take, fall, cut down and carry away, either by land or water, any wood or timber fit to build a mill, other than timber fit to split into clapboards, upon any the lands next adjoining to the said twenty acres of land lying on each side of said run of water, at *Winter's* run aforesaid, in the county aforesaid: and if it be to the damage and prejudice of us, or others, then to what damage and prejudice of us, and to what damage and prejudice of others, and of whom, and in what manner, and how, and of what value they are, by the year, according to the true value thereof, now before any other improvement of the said twenty acres of land; and who are the present possessors of the said twenty acres of land, and what lands and premises remain to the present possessors over the said twenty acres; and if the said land, remaining to the present possessors, over the said twenty acres, will suffice to uphold their manor, viz: the sixth part of their manor, allotted them by the conditions of plantations, for the demise, before the alienation, so as the county, by the alienation aforesaid, in default of the present possession, more than was want, not to be charged, and grieved, and the inquisition thereupon openly and distinctly made to us, in our Chancery, under the seal

and the seals of them by whom it was made without delay, send. Witness our trusty and well beloved *Horatio Sharpe*, Esquire, Chancellor of our said province, this 13th day of April, in the 13th year of our dominion, A. D. 1764. *Rheverdy Gheselin, Reg. Cur. Can.*"

" *Baltimore* County, ss. This is to certify, that at the execution of a writ of *ad quod damnum*, the inquisition of which is hereto annexed, I have surveyed and laid out in the name of *Thomas Saunders*, of *Baltimore* county, on a run called *Winter's* run, ten acres on one side, and ten acres on the other side of said run, beginning at a bounded red oak, standing on the west side of *Winter's* run aforesaid, it being the third bounded tree of a tract of land called the *Expectation*, and running, &c. containing and laid out for twenty acres, more or less. *Wm. Smith, D. S. H. C.*"

" This inquisition indented, and taken upon *Winter's* run, descending into *Bush* river, in *Baltimore* county, this second day of July, in the year of our Lord, seventeen hundred and sixty-four, before me, *Aquila Hall*, high Sheriff of the same county, by the oaths of *James Maxwell*, &c. twelve honest and lawful men of the county aforesaid, who being sworn by virtue of the writ hereunto annexed, to inquire into the exigency thereof, upon their oaths do say: that if the right honorable the lord proprietary grant unto *Thomas Saunders*, of *Baltimore* county, twenty acres of land, lying on the said *Winter's* run, descending into *Bush* river, as aforesaid, viz: 10 acres on each side of the said run, bounded according to the metes and bounds mentioned in the certificate of survey hereunto prefixed, made by *William Smith*, surveyor of the county, as may be most convenient for the building a water mill at the place above mentioned, in *Baltimore* county aforesaid, it would not be to the damage of the honorable the lord proprietary, as being no manor; and that the said 20 acres of land, is of the yearly value of one pound sixteen shillings, current money, without further

improvement and no more; and that the said 20 acres of land is part of two tracts of land, viz: 10 acres, one moiety thereof lying on the west side of the aforesaid run, is part of a tract of land called the *Expectation*, and *James Norris* is the present possessor, and is thereby damaged the sum of fifteen pounds, and the yearly rent thereof, is eighteen shillings current money, and the other 10 acres, the other moiety thereof, lying on the east side of the aforesaid run, is part of a tract of land called the          being the *Glebe* of *Saint John's Parish;* and the vestry of *Saint John's Parish,* aforesaid, are the present possessors, and they are thereby damaged the sum of £20 current money, and the yearly rent thereof, is eighteen shillings current money, and there still remains sufficient to each of the present possessors to uphold their manor, viz: one sixth part thereof. In testimony whereof, as well the sheriff as the jurors aforesaid, have hereunto set our hands and seals, the day and year above written. Signed and sealed by the sheriff and jurors."

"*Maryland, to wit:* The right honorable *Henry Harford,* Esquire, lord and proprietary of the province of *Maryland:* Whereas, *Thomas Saunders,* of *Baltimore* county, hath purchased out of our Court of Chancery, within our said province, our writ of *ad quod damnum,* directed to the sheriff of *Baltimore* county, commanding him, &c. (here the lease recited the writ:) And whereas the aforesaid sheriff at the instance and request of the aforesaid *Thomas Saunders,* did return into our said Court a certain inquisition, indented and taken before him in the county aforesaid, on the second day of July, in the year of our Lord 1764, by the oaths of twelve honest and lawful men of the county aforesaid, who upon their oath did say, &c. (here the lease recited the inquisition and return:) Now know ye, that we are contented and pleased to grant, and by these presents do demise, grant, and to farm, let unto the aforesaid *Thomas Saunders,* his heirs, executors and administrators, the aforesaid 20 acres of land, to build a water mill, together

with free egress and regress to the said water mill, either by land, through any man's land next adjoining to the said 20 acres of land, or else by water, together with liberty to take, fall, cut down and carry away, either by land or water, any wood or timber fit to build a mill, other than timber fit to split into clap-boards, upon any of the lands next adjoining to the said 20 acres. To have and to hold the said 20 acres of land, and premises aforesaid, unto him, the said *Thomas Saunders*, his heirs, executors and administrators, from the date of the inquisition aforesaid, unto the full end and term of eighty years then next ensuing, to be complete and ended. Yielding and paying therefor, unto our heirs and successors, the same rents, fines and services, as are reserved due and payable unto us for the said 20 acres, and also yielding and paying the yearly rents in the above inquisition set forth. Witness, *Richard Lee*, President and Chancellor of our said province of Maryland, this 9th day of June, in the third year of our dominion, 1774." True copy—Test, *Ramsay Waters*, Reg. Cur. Can.

And the plaintiff also gave in evidence, that *Saunders* then entered into possession of the lands in said lease described, as the same is located on the plots in this cause. That he afterwards built a mill thereon, which went into disuse in the year 1785. That the said *Thomas Saunders*, on the 1st day of December, 1786, conveyed the land in the said lease described, unto *John Lee Webster*, who, upon the death of said *Saunders*, in the year 1792, took possession of the same and held it until his death. And that the said *Webster*, by his will, in 1795, devised the same unto his son, *Isaac Lee Webster*, who took possession thereof, and by him and his tenants, of whom the defendant is one, the same hath been held in possession to this time, and by the defendant for fifteen years before the institution of this suit.

Thereupon the *defendant* offered evidence that the said *Thomas Saunders* had, by actual enclosure, held the possession for several years before his death, of all the land

contained without the location of his possession, as made on the plots in this cause; that part of the fences which formed the said enclosure and possession, were shortly after his death moved to where they are now located on the plots in this cause, by the defendant, as his possession by indented lines, and as his defence in this case; that to this extent, possession by actual enclosures, has always since so remained; that the said *John Lee Webster*, and *Isaac Lee Webster*, his tenants, and the defendant as one of them, actually held and possessed all the land within the said enclosures of possession so located, for which defence is made in this action.

Whereupon the plaintiff further gave evidence to the jury, that the said *James Norris*, by his will in August, 1798, devised 100 acres of the land in the declaration mentioned, including the part so held by the defendant, to his son *James Norris*, in fee, who entered into, and possessed the same, except the part aforesaid located as the possession of the defendant, and the said *Webster* and *Saunders;* that the said last mentioned *James Norris*, executed a deed (of which the following is an office copy,) to *Josiah S. McComas*, and the said *Josiah S. McComas* executed the deed following to *Benjamin G. Jones, lessor* of the plaintiff.

The deed from *James Norris*, the son, to *Josiah S. McComas*, was dated 9th July, 1807, and in consideration of the sum of £150, " granted, bargained, sold, aliened, enfeoffed, and confirmed unto him, the said *Josiah*, his heirs and assigns, part of a tract of land called *Expectation*, lying on the lower end of said tract, containing 100 acres, and all the estate, right, title, and interest whatever, of him, the said *James Norris*, both at law and in equity, to the said tract of land and premises, hereby bargained and sold, or meant, mentioned, or intended so to be, and every part and parcel thereof." This deed was duly acknowledged and recorded, as appeared from the certified copy, under the seal of the clerk of *Harford* County Court.

The deed from *Josiah S. McComas* to *Benjamin G.*

*Jones*, was dated 21st February, 1818, and in consideration of the trusts reposed in him by a certain *James Norris*, and the payment of *one dollar*, granted, bargained, sold, aliened, released and confirmed, unto the said *B. G. J.* and his heirs, the same land and interest as described in the preceding deed. This was an *original deed*. There was the usual certificate of acknowledgment before two of the justices of the peace, and it was in fact endorsed on the back as follows: "received and recorded the 21st day of February, 1818, in liber H. D. No. 1, folio 227, one of the land record books of *Harford* County Court, and examined by *Henry Dorsey*, Clerk." And also proved that the said *McComas* and *Jones*, took possession under said deeds, respectively, of the land mentioned therein, except the part so as aforesaid mentioned, in the possession of the defendant. The defendant then prayed the opinion and direction of the Court, to the jury, that if they believed the matters so given in evidence, that then the length of possession so holden by the defendant, and those under whom he claims, doth in law bar the plaintiff's recovery of the land, included within the lease to *Saunders*, being the land condemned as aforesaid; but the Court [ARCHER, Ch. J.] refused such opinion and direction. The defendant excepted.

The plaintiff then offered evidence, that in the year 1805, the said *James Norris*, the younger, being on the land so occupied by the said defendant, did enter thereon, and did demand of the defendant the surrender to him of the said land. And that the said defendant refused to surrender the possession of the same to the said *Norris*. Whereupon the defendant objected, that the entry and demand so made, were insufficient to entitle the plaintiff to recover, and prayed the opinion of the Court, and their direction to the jury, that if such entry and demand be necessary in law, that the same ought to be made by the lessor of the plaintiff, after the deed of conveyance before mentioned made to him by said *McComas*, and before this action brought; but the

Court, [ARCHER, Ch. J.] refused such opinion and direc-- tion, and directed the jury, that the entry and demand so made by the said *James Norris*, was a sufficient entry and demand. The defendant excepted, and the verdict and judgment being against him, he appealed *to* this Court.

The cause was argued before BUCHANAN, Ch. J., EARLE, and MARTIN, J.

The following are extracts of so much of the two acts of Assembly, as were considered in this cause:

By the act of 1704, *ch.* 16, *sec.* 5, it was enacted, that no person having, or that hereafter shall have obtained, any grant for any lands whereof such person or persons are not the real owners or possessors thereof, and whereupon he, she, or they have already built, or shall hereafter build a water mill, as the law hath before directed, shall have any right, title or claim, to any land granted for any time or term whatsoever, after such mill by him or them already built as aforesaid, or that shall hereafter be built, shall be casually broke, or gone to decay as aforesaid, other than two years from the new erecting, building, finishing and repairing of such mill as aforesaid; but that in all and every case where any person or persons that have already built, or shall hereafter build, any water mill, which are, or that hereafter shall be broke, or gone to decay, as aforesaid, and shall not within two years after the publication hereof, or within two years after such mill shall become broke, or gone to decay as aforesaid, cause the same to be new builded, repaired and finished as aforesaid, it shall and may be lawful for the real owner or owners for such land, to such person or persons so granted as aforesaid, to re-enter upon the same; and in case such person or persons shall refuse, or deny to give the owner or owners of such land as aforesaid, peaceable and quiet possession thereof, such owner or owners shall, and may r ecover his right to the same by ejectment, or otherwise

as the law directs; any thing in this act contained to the contrary notwithstanding.

By the act of 1766, *ch.* 14, *sec.* 2, conveyances in order to pass lands, are directed to be enrolled in the records of the same county where the lands lie, or the Provincial Court, within six months after the date of such deed or conveyance; and the Clerk of the Court shall immediately, upon the receipt of such deed, endorse thereon the time of his receiving the same, and enroll the same, &c. And " shall on the back of every such deed or conveyance, in a full, legible hand, make a certificate of such enrollment, or the time of making it, and also of the folio of the book in which the same shall be enrolled, and shall to such certificate set his hand."

*R. W. Gill,* for the appellant, contended,

1. That the lessor of the plaintiff has shewn that *James Norris* was seized of the land in controversy on the 9th of June, 1774. 2. That the same land was condemned under a writ of *ad quod damnum,* and on the 9th of June, 1774, leased by competent authority for a term of 80 years, to a certain *Thomas Saunders,* under whom the defendant below claimed. 3. That this term not expiring before the year 1854, the lessor of the plaintiff to recover before that period, must shew a forfeiture of the land enuring to him. 4. That by the act of 1704, *ch.* 16, by which the land was condemned, the only forfeiture of the lease to *Saunders,* is the mill being casually broken, and going to decay, and not repaired within two years. 5. That the plaintiff's evidence, that the mill erected on the land in controversy, had gone into disuse, does not establish a forfeiture of the lease. 6. That under the true construction of the act of 1704, *ch.* 16, the right of entry mentioned in the 6th section, is exclusively reserved to the real owners of such land, at the time of the right accrued. 7. That *James Norris, Jr.* under whom the lessors of the claim having but a naked right of entry to the lands in controversy, and

for a condition broken, could not assign that right, and therefore the County Court erred in refusing to instruct the jury, that the entry and demand of *James Norris, Jr.* in the year 1805, was insufficient to entitle the plaintiff to recover. 8. That the right to re-enter on the lands in controversy, if it accrued at all, accrued in the year 1787, and this suit not having been commenced until the year 1818, the right of entry for that forfeiture was barred by the defendant's actual possession. 9. That as *Jones* claims under a deed, the *original* of which was given in evidence, and no proof was offered, that the endorsement on the back of the said deed, purporting to be the endorsement of the Clerk of *Harford* County Court, was, in fact, his endorsement, said deed was inoperative to pass any estate to said *Jones*, and therefore *Jones* having no title could not avail himself of *Norris's* demand and entry. He referred to the act of 1704, *ch.* 16, *sec.* 5. *Duppa vs. Mayo,* 1 *Saund.* 413. *Ib.* 287, (*a*) *note* 16. *Hammond and Ridgely,* 6 *Harr. and Johns.* 245. 2 *Cruse Dig.* 553, *sec.* 28. *Runnington on Ejectment,* 60.

*Flusser,* for the appellee, cited, 1 *Plowden,* 363. 6 *Bac. Abr.* 383. *Coke Lib. sec.* 380. 1 *Bac. Ab.* 638. 2 *Blk. Com.* 155. *Coke. Lit.* 203 (*b*) *note* (1) 7 *Com. Dig.* (*d*) 70. 17 *Viner placitum,* 1. 1 *Shep. Touch.* 152. 1 *Saund.* 213. 3 *Cruse Dig.* 549. 2 *Stark. Ev.* 507, 508. *Jackson vs. Parker,* 3 *Johns. Cases,* 124. *Jackson vs. Thomas,* 16 *Johns,* 293. 1 *Cain. Rep.* 400.

EARLE J. delivered the opinion of the Court.

This case must be reversed, and returned to *Harford* County Court on a *procedendo.* The deed from *McComas* to *Jones,* is a link in the chain of the plaintiff's title, and the original was read without offering proof of the hand writing of the Clerk, who endorsed the time it was received into the office, which was indispensable to laying it before the jury. The omission, it is likely, was not observed at

the trial, but as it is seen by us, and being a case before the act of 1825, *ch.* 117, we must notice the error, and make it the ground of a reversal. 7 *Harr. and Johns.* 42.

As this case is to be tried again, and we have to act upon the bill of exceptions in the record, it becomes our duty briefly to assign our reasons for concurring in the opinions expressed by the Judge who signed it.

The lessor of the plaintiff claims the disputed land under *James Norris,* the elder, who was the undisputed owner of it in the year 1774, when it was granted to *Thomas Saunders,* by the *lord proprietary,* under the *ad quod damnum* law of 1704, *ch.* 16, for a term of 80 years, which from efflux of time, is not yet expired. The defendant claims under *John Lee Webster,* to whom *Saunders* assigned his lease in the year 1786. The mill erected thereon by *Saunders* went to decay, and was disused in 1785, and was not rebuilt in the year 1787, within two years thereafter, and by the terms of the law and estate for years granted by the *proprietary,* then ceased, and the lease became null and void. This being the character of the condition of the lease broken, advantage of the breach may be taken without entry on common law principles, either by the original owner, or by the assignee of the reversion. *Vid. Duppa and Mayo,* 1 *Saund.* 287. The re-entry given by the act of 1704, to the owner, was a summary remedy designed for his benefit, and does not alter in this respect the principles of the common law, which restrains the assignment of an entry for a condition broken, where, after the forfeiture incurred, the estate may continue, but allows it, where the violation of the condition puts an end to the estate of the particular tenant. But there was an entry in this case by *James Norris, Jr.* in the year 1805, and agreeably to the language of the act of 1704, he might have supported an ejectment for the land, without further entry; and his grantee and those claiming under him, are surely in the same situation with himself, and may sue in ejectment, upon their right of entry. It is the case of

constant occurrence, where a grantor having a right of entry on land, conveys it to another, and therewith necessarily, the power to maintain an ejectment for it.

In the first part of the bill of exceptions, the defendant, the appellant, had prayed the direction of the Court to the jury, that if they believe all the matters given in evidence, that then the length of possession holden by the defendant and those under whom he claimed, doth in law bar the plaintiff's recovery of the land, included in the lease to *Saunders;* this direction the Court refused to give, and we think rightly. We cannot perceive any thing in the facts of the case, that looks like a possession, adverse to the title of the plaintiff, until the year 1805, when on the demand of *Norris, Jr.* the possession was refused to be delivered to him by the defendant. When the land was enclosed by *Saunders,* he was confessedly the tenant of *Norris,* the elder, and it is natural to suppose fenced it in, that he might have the greater enjoyment of it. That the enclosures were kept up by *Webster,* and his tenants, with the same views, we must presume, where no attempt is made to prove an altered, and adverse intention. If no rent was paid, and the tenancy not expressly admitted, there is nothing to shew that the possession was held in hostility to the rights of the landlord, and those claiming under him. In the absence of this proof nothing is to be presumed in favor of an adverse possession, and more particularly so, where it commenced rightfully, and with the consent of the owner. The mere holding over, after the term ended, is not evidence of an adverse possession, and the possessor will be regarded as the tenant at will of the landlord, unless he can shew that since the expiration of the lease, he has held forcibly, or has acquired a title, paramount to that under which the possession was originally taken. Something more than an intimation of hostility in such a case is necessary, and the possessor coming in under the assignee of the lease, as in this case, must be supposed to hold his title.

**JUDGMENT REVERSED AND PROCEDENDO AWARDED.**