GEORGE L. CAMPBELL, S. CHARLES CARROLL, and ELIZABETH J CARROLL his Wife *vs.* CHARLES SHIPLEY.

*Action of Ejectment under Stat. 4 Geo. II. ch 28, and Act of 1872, ch. 346—Leases for ninety-nine years renewable forever—Right to re-enter for non-payment of rent—Relation of Landlord and tenant established between Disseissor and disseissee by the acts of the disseissor. Adverse possession of Tenant how established as against the Landlord—Evidence.*

A lease for the term of ninety-nine years renewable forever, is within the operation of the *Statute of* 4 *Geo. II. ch.* 28, relating to actions of ejectment by landlords on the non-payment of rent.

A lease giving the right of re-entry if the rent be in arrear for one year, *"the same being first lawfully demanded,"* confers a *right to re-enter* within the meaning of the *Statute,* which will support an action of ejectment without a previous demand of the rent.

A lessee for the term of ninety-nine years renewable forever died, and S. entered upon the premises as a trespasser or disseissor. Before his possession had ripened into a perfect title by the lapse of twenty years, he voluntarily administered upon the estate of the lessee, and assigned and took a re-assignment to himself of the lease, by deeds which he placed upon record and in which the title of the lessor was carefully recited and recognized. S. died leaving a will by which he gave all his estate to his wife, with remainder in specific portions to his children. After his death letters testamentary on his estate were granted to his wife as executrix under the will. In an action of ejectment under the Act of 1872, ch. 346, sec. 2, brought by the grantee of the reversion against the parties in possession, claiming under S. it was HELD:

1st. That by administering on the estate of the lessee and placing the deeds of assignment on record, S. became the tenant for the lessor, and his holding thenceforth until his death was consistent with the title of his landlord.

2nd. That when the relation of landlord and tenant has been created the possession of the tenant is consistent with the title of the landlord, and the mere non-demand and non-payment of rent are not sufficient to bar the landlord's *title*, whatever effect they may have if long continued, upon his right to recover the rent.

3rd. That not only is the tenant precluded from relying on his possession to bar his landlord, but also all persons who come in under or derive possession from the tenant in any manner however remotely.

4th. That in cases like this there must be at least some proof of an actual ouster to rebut the presumption that the possession was in accordance with the title.

rth. That the inventory of the estate of S. or the fact that S. returned no inventory of the estate of the original lessee upon which he administered, offered in evidence by the defendants, was irrelevant to the case and properly excluded.

One of the witnesses was asked by the defendants whether the descendants of S. claimed the property as their own absolute property in any conversation with him, or did they admit the claim of any other person to the property in conversations with him about it. And another witness was asked did the mother of the defendants while in the possession of the property, in a conversation with him claim the property as her own fee simple absolute property. On objection it was HELD .

That these questions were not proper to be put, unless the plaintiff or some one under whom he claimed, was present at the time of the conversations.

Another witness was asked by the defendants, "do you know whether the possession of the property by S. and those claiming under him was notorious, adverse and exclusive, and accompanied by the claim of absolute title? what was the notorious general reputation in the community as to the ownership of this property by S. and those claiming under him?" and another witness was asked, "do you know whether the possession of the property by S. and those claiming under him was notorious, adverse, exclusive and accompanied by the claim of absolute title?" There was no offer to prove that such claim of absolute title was ever made in the hearing of the plaintiff or of any one under whom he claimed. And the defendants' counsel admitted he could not show this, and there was no offer to prove that the then owner of the reversion was a resident of Baltimore City or of the State of Maryland, so that the general reputation of ownership in the community or notoriety of possession, or the alleged claim of absolute title could possibly have reached him; on objection it was HELD:

That these questions were not proper to be put.

APPEAL from the Superior Court of Baltimore City.

This was an action of ejectment brought by the appellee against the appellants, to recover a lot of ground in the City of Baltimore.

*First Exception.*—After the introduction of the evidence on the part of the plaintiff, which is stated in the opinion of the Court, the defendants offered in evidence the will of Jacob Sleeper before given in evidence by the plaintiff, as giving them color of title to the property; and then made an offer of proof in the words following:

The will of Jacob Sleeper being offered in evidence by the plaintiff, for the purpose of showing that the said Sleeper thereby devised the leasehold property obtained by said deed from said Henry Peters, and for the purpose of negativing the position of the defendants, that the property in dispute was considered by the said Sleeper as real estate, and for other purposes, and the plaintiff also having offered the letters testamentary, granted to the executrix under said will, the defendants propose now to offer generally, the inventory returned by said executrix, as one of a series of acts, showing the manner of dealing with the property by the said Sleeper; the claim his devisees made to it, and the manner in which it was held by the said devisees; which offer was refused by the Court, (DOBBIN, J.,) and the evidence not allowed to be offered.   The defendants excepted.

*Second Exception.*—The defendants having offered evidence to show possession on the part of the Sleepers, and having produced a witness who stated that Jacob Sleeper took possession of the property in about 1808, and lived there till he died, and that the Sleepers lived there until 1840, when the house burned down—then proposed to ask the witness the following questions: Did the Sleepers claim the property as their own absolute property in any conversation with you?   Did the Sleepers admit the

claim of any other person to the property in conversation with you about it?

The plaintiff objected, unless the defendants were prepared to show that the plaintiff or some one under whom he claimed, was present at such conversation. The Court sustained the objection, and refused to permit the question to be put, and the defendant excepted.

*Third Exception.*—The defendants' counsel then proposed to ask witness the following questions: Do you know whether the possession of the property by the Sleepers was notorious, adverse and exclusive, and accompained by the claim of absolute title? What was the notorious, general reputation in the community as to the Sleepers ownership of this property? Which questions the Court on objection made by the plaintiff refused to permit to be answered, and the defendants excepted.

*Fourth Exception.*—The defendants' counsel proposed to ask a witness the following question: Did Mrs. Campbell, while in possession of the property, in a conversation with you, claim the property as her own fee-simple absolute property? The Court ruled the question not admissible unless the plaintiff, or those under whom he claims was present at the time of said conversation. The Court also refused to permit the witness to testify as to anything Mrs. Campbell said to witness as to her ownership of the property, and in what manner she claimed it, unless the plaintiff or those under whom he claims was present. The defendants excepted.

*Fifth Exception.*—The defendants then offered to prove by the books in the Orphans' Court of Baltimore city, the fact that there was no inventory returned by the administrator of any property belonging to John Shroud, which evidence the Court refused to allow to be introduced, and the defendants excepted.

*Sixth Exception.*—The defendants then proposed to offer the inventory returned to the Orphans' Court of Baltimore

city, by the executrix of the said Sleeper, which showed that the only personal estate the said Sleeper possessed was some household furniture and trade implements, and a lot of ground forty feet by sixty feet under a rent of fourteen dollars per annum to Jacob Oliver, no deed or will from Jacob Oliver being any part of the plaintiff's claim; but the Court ruled it inadmissible and refused to permit the same to be offered in evidence, and the defendants excepted.

*Seventh Exception.*—After the introduction of the evidence in the sixth bill of exceptions, the defendants further proved by George L. Campbell, one of the defendants that he was born in 1832, in the house heretofore mentioned and lived there till the house was burned down in 1840; there never was any demand for rent that he knew of. The defendants then proposed to ask the witness the following question: "Do you know whether the possession of the property by the Sleepers was notorious, adverse, exclusive, and accompanied by the claim of absolute title?"

The plaintiff's counsel objected that the question should not be put without proof that the claim was made in the hearing of the plaintiff or of some one under whom he claimed.

The defendants' counsel said he could not prove that, as there was no evidence in the case that the Sleepers knew of any one having a claim for rent upon any part of the said property possessed by them.

The Court sustained the objection and refused to permit the question to be put; whereupon the defendants excepted.

*Eighth Exception.*—The plaintiff then prayed the Court to grant the following prayer:

If the jury shall find the execution and delivery of the lease from Lyde Goodwin to John Shroud, offered in evidence, and of the assignment from Sleeper, admr. of Shroud to Peters, and from Peters to Sleeper, and the

grant of letters of administration on the estate of said Shroud to said Jacob Sleeper, and shall find that the said Jacob Sleeper died in possession of the property in controversy, having made his last will and testament, and that the same was admitted to probate by the Orphans' Court of Baltimore county, and letters were committed to his widow Hannah Maria Sleeper, and that by the will he devised the property in controversy, or said property together with other, and that the said Hannah and her daughter, Philopena, the mother of the defendants, Geo. L. Campbell, and Mrs. Carroll, wife of S. Charles Carroll, were in possession living with said Jacob before his death, and so remained until the death of said Hannah Maria, and that said Philopena continued in possession with her children, said Geo. L. Campbell and Mrs. Carroll, until her death nineteen years since, and shall further find the execution and delivery of all the other deeds offered in evidence, and the proceedings in equity also offered, and that the lines of the property in such deeds and proceedings mentioned include the lot in controversy, and that more than one year's rent reserved by said lease, was in arrear when the suit was instituted, and that there was not, at the time of the institution of this suit, and for some time before, sufficient distrainable property to countervail the rent due, then they should find for the plaintiff.

And the defendants prayed the Court to grant the following prayers:

1. That if the jury believe that the defendants' ancestors, under whom they claim, were in possession and living upon a tract of ground, of which the present lot is a part, in 1808, claiming it as their own, and that they remained in such possession and occupancy till 1840, when the house burned down, and that there never has been adverse possession of the property to them up to the present time, and that they never have paid any rent for the same, and no demand for the same has ever been made, then their

verdict must be for the defendants, although they may believe there was a deed that passed between Jacob Sleeper, administrator of John Shroud, to Henry Peters, and from Henry Peters to Jacob Sleeper, offered in evidence.

2. That if the jury believe there never has been any demand upon the defendants, and those under whom they claim for rent for the said property, or any paid since the said Jacob Sleeper was in possession of the said property in 1808, up to the present time, and that the said Jacob Sleeper, and those under whom the defendants claim, have been in possession ever since, then there is evidence for the jury to presume that the said rent has been extinguished by some act or deed of the party entitled to the same.

3. That if the jury believe the plaintiff has never demanded rent of the defendants, and those under whom they claim, for the said property, from the year 1808 till the present time, and that no rent has ever been paid for the same by the defendants from said year, 1808, till now, then the plaintiff has lost his right of entry upon the said property, and the verdict must be for the defendants.

4. That if Jacob Sleeper was in possession of the property, claiming it as his own, from the year 1808 till he died in 1818, and said property continued in possession of his devisees, and those under whom the defendants claim, up to the present time, claiming it all the time as their own, then their verdict must be for the defendants, although they may find that there was such a deed from Henry Peters to the said Jacob Sleeper, as offered in evidence by the plaintiff.

The Court granted the plaintiff's prayer, and refused all the prayers of the defendants; and the verdict and judgment being against them they appealed.

The cause was argued before STEWART, GRASON, MILLER and ROBINSON, J.

*W. H. S. Burgwyn,* for the appellants.

There never existed the relation of landlord and tenant as between the appellee and the appellants, and those under whom they respectively claim.

What was the nature of the possession of the said Sleeper from 1808, till the assignment of lease from Peters to him in 1818? He was not in possession as assignee of the said lease to Shroud, dated 1801 ; for Shroud had died two years previously, viz: in 1806 or 1807, and there is no deed from him to the said Sleeper, and there could be no parol assignment of said lease. *Peter vs. Schley's Lessee,* 3 *H. & J.,* 211.

He was not tenant at will, because there is no evidence he entered by consent of the reversioner, or receipt or demand of rent by the same. *Comyn on Landlord and Tenant,* 7. He was not tenant by sufferance, for said lease had not expired. *Holt's Lessee vs. Smith,* 1 *Har. & McH.,* 274. The only construction possible, as to the nature of his possession, is that it was that of a trespassor or disseisor ; for there never existed between them any privity either of estate or of contract. *Stockett vs. Watkins, Admrs.* 2 *Gill & John.,* 339 ; *Comyn on L. & T.,* sec. 257.

The lot in controversy is but a small part of the original lot of ground possessed and enclosed by the said Sleeper in 1808, to the remainder of which lot, it is not claimed he ever was lessee or assignee ; and it was proper evidence for the jury from which to find that Sleeper's possession of the entire lot was under one and the same claim of title.

Such being the condition of things, the different deeds by which Sleeper became assignee of the lease to Shroud of 1801, were not of themselves sufficient to constitute him tenant, without some additional evidence, such as payment of rent, or admission of tenancy, or demand of rent by the reversioner ; for it is as consistent with the facts and law to hold that the said Sleeper, believing himself the owner of the reversion in all of said lot, purchased

in an outstanding lease as to a part, to quiet his possession ; as that believing he had no title to the property he occupied, he voluntarily became tenant of part of that which he previously held and claimed as owner.

There is a total absence of any evidence to show that Sleeper intended to constitute himself a tenant by the simple purchase of the lease to Shroud, while the facts that the lease was obtained after Sleeper had been in possession ten years, and twelve years after the death of Shroud, and that the inventory returned by the executrix of Sleeper, which contained no mention of said alleged personal property, was never objected to, tend to prove, in the absence of all contrary evidence that Sleeper never was and never considered himself a tenant, but as owner in fee simple of all the lot he had enclosed and occupied, and it was proper evidence to go to the jury. This is not a case of estoppel by deed. *Casey's Lessee vs. Inloes*, 1 *Gill*, 430. Hence the Court erred in excluding the evidence contained in the several bills of exceptions, except the last.

But conceding for argument's sake, that the relation of landlord and tenant existed by virtue of the assignment of said lease to Shroud to Sleeper, can the appellee recover in this action?

The condition in the lease is express, that before the lessor can enter, the rent must be "first lawfully demanded." It is a condition precedent to re-enter, which the appellee has neglected to comply with, and the statute of 4 *Geo. II, ch.* 28, *sec.* 2, does not remove the necessity of a previous demand of the rent in this case. *Duppa vs. Mayo,* 1 *Wm. Saunders,* 287, *b, note* 16 ; 1 *Washburn on Real Property,* 214, (*marg.*)

The appellee is barred of his remedy by the Statute of Limitations. He is barred of his recovery of the rent due under the lease, because none has ever been paid, from which fact the jury could presume it had been extin-

guished. *Livingston vs. Livingston,* 4 *John. Ch. R.,* 294; *Failing vs. Schenck,* 3 *Hill,* 346; *Jackson vs. Davis,* 5 *Cowen,* 123.

He is barred of his recovery of the lot by the adverse possession and holding of the appellants, and those under whom they claim. *Angell on Limitations, sec.* 444.

The cases of *Gwynn vs. Jones,* 2 *Gill & John.,* 173, *Colvin vs. Warford,* 20 *Md.,* 357, *and Williams vs. Annapolis,* 6 *Har. & John.,* 529, are not in point. In the case of *Gwynn vs. Jones,* the Court say "they cannot perceive anything in the facts of the case, (simply non-payment of rent,) that looks like a possession adverse to the title of the plaintiff until the year 1805." In the case of *Colvin vs. Warford,* the defendant did not claim to hold adversely to the owner, but being a tenant she purchased the reversion by a defective deed, and the deed being null and void, she still was tenant. In the case of *Williams vs. Annapolis,* the defendant entered upon a defective lease, and paid rent up to 1803, and the plaintiffs filed their bill in equity against him in 1815, to compel him to account for the rents from 1803. But in the case of *Camp vs. Camp,* 5 *Conn.,* 291, the jury were authorized, where the defendant, a tenant at will, remained after the death of lessor, in the exclusive and uninterrupted possession of the land demised, claiming it as his own for a period of 57 years, "to presume a restoration of the land to the lessor and then an actual ouster of them immediately after the death of the lessor, thereby dissolving the relation."

And in *Duke vs. Harper,* 6 *Yerger,* (*Tenn.,*) 280, it was held where there has been a disclaimer and a length of possession exceeding the time required by the Act of Limitations, notice to the landlord or an actual ouster may be presumed, &c., and it is submitted that in this case the jury were authorized to presume from the length of time during which rent has not been paid, 64 years, that

notice to the landlord had been given, and an actual ouster taken place. *Willison vs. Watkins,* 3 *Peters,* 43.

The inventory returned on Sleeper's estate by his executrix, was proper evidence as one of a series of acts going to show the claim made to the said property by his devisees and the manner of their treatment of the same. *Owens vs. Collinson,* 3 *G. & J.,* 37.

And the declarations made by Philopena Sleeper, while in possession of the property, as to her claim upon it, were admissible as part of the *res gestæ.* 1 *Taylor on Evidence,* 551.

*O. P. Baldwin, Jr.,* and *Wm. A. Fisher,* for the appellee.

The appellee's prayer was properly granted and those of the appellants were properly refused.

The first three of the appellants' prayers ask the jury to find that no rent had been paid since 1808, of which there was no proof whatever. They are all based on the fallacy that the *possession* of the Sleeper family, without payment of rent, was evidence of such adversary possession as to oust the title of the landlord.

When the relation of landlord and tenant has been shown to have been created, the *possession* of the tenant and of those claiming under him, is consistent with title in the landlord, and the mere non-payment of rent is not sufficient to bar the landlord's title. *Jackson vs. Davis,* 5 *Cowen,* 129–131 ; *Angell on Limitations, sec.* 438 ; *Gwynn vs. Jones' Lessee,* 2 *G. & J.,* 184 ; *Colvin vs. Warford's Lessee,* 20 *Md.,* 395–6 ; *Doe vs. Danvers,* 7 *East.,* 299 ; *Williams' Ex. vs. Annapolis,* 6 *Harris & Johns.,* 529 ; *Saunders vs. Annesley, per Lord Redesdale,* 2 *Sch. & Lefr.,* 106 ; *Al. and Nap.,* (*Irish,*) *Exch.,* 217 ; *Failing vs. Schenck,* 3 *Hill,* 344.

Not only the tenant is precluded from relying on his *possession* to bar his landlord, but all persons who come in

under or derive possession from the tenant in any manner. See the previous cases, and also: *Angell on Lim.*, sec. 442; 1 *Taylor's Ev.*, 116, 117; *Brandter vs. Marshall*, 1 *Caine's Rep.*, 394; *Jackson vs. Scissam*, 3 *Johns.*, 504; *Davis vs. Pierce*, 2 *Term*, 53; *Doe vs. Wilkinson*, 3 *Barn. & Cress.*, 135; *Feunn vs. Daplack*, 2 *Bing.*, 10; *Valentine on Limitations*, 38–49.

The Court properly rejected all the evidence proposed under the various exceptions. The appellants acted altogether on the theory that it was only necessary for them to show *possession* or *claim* of title. Their *claim* of title was entirely consistent with the reversion in the appellee, their claim being referable to the leasehold to which they were entitled. But even if they could show claim of title, for the purpose of defeating their landlord, they could not do so by the character of evidence offered.

The first exception was to the refusal to allow the *inventory* in the estate of Jacob Sleeper to be offered, to show how the said *deceased* acted as to property, and how his devisees dealt with it. It could of course be of no consequence how the property was returned in the inventory, or whether it was returned at all.

The offer in the fifth bill of exceptions was to show that Sleeper, as administrator of Shroud, returned no inventory. This evidence was inadmissible. Sleeper sold the leasehold title, as the administrator, to Peters, and it was resold to him by Peters. This sale might be good, if authorized without an inventory. It is quite immaterial for the purpose of the appellee, however, whether the *title* passed by those assignments; the *possession* was acquired by Sleeper, as the administrator of Shroud, and the possession was devolved from him upon the appellants. Besides Sleeper, and those claiming under *him*, could not maintain that title did not pass. 2 *Smith's L. Cases*, 707 and 690; *Lloyd vs. Burgess*, 4 *Gill*, 191; *Fridge vs. State*, 3 *G. & J.*, 104.

All the other offers were to show the general reputation in the neighborhood that the Sleepers owned the property, or conversations in which they made such claim out of the hearing of the appellee, or of any one under whom he claimed.

MILLER, J., delivered the opinion of the Court.

This is an action of ejectment for a lot of ground in the city of Baltimore, instituted by the appellee against the appellants, on the 31st of October, 1873, under the 2nd section of the Act of 1872, ch. 346, a re-enactment in substance of the 2nd section of 4 *Geo.* 2., *ch.* 28, which, up to that time had been in force in this State.    *Alex. British Statutes,* 704.

The plaintiff's case is this: He offered in evidence a lease of the lot in question from Lyde Goodwin to John Shroud, dated the 1st of May, 1801, for ninety-nine years, renewable forever, reserving the yearly rent of $14.    He then proved the grant on the 17th of January, 1818, of administration upon the estate of Shroud to Jacob Sleeper, the ancestor of the defendants, and under whom they claim, and then offered in evidence a conveyance of the leasehold interest from Sleeper, as administrator of Shroud to one Henry Peters, dated the 22nd of January, 1818, for the consideration of $100, and a re-conveyance of the same by Peters to Sleeper on the next day, January 23rd, 1818, for the same consideration.    Both of these conveyances, the assignment to Peters and the re-assignment to Sleeper, recite the original lease from Goodwin to Shroud, and were both recorded on the same day, January 23rd, 1818. He then offered in evidence the will of Sleeper, executed on the 7th of August, 1818, by which he devised all his estate to his wife, (whom he also appointed his executrix,) for life, and after her death to be divided among his five children, as therein mentioned, and proved the grant of letters testamentary on his estate to his widow, on the 25th

of June, 1819. He then proved devolution of the rever-
sion in this property on himself, his title thereto accruing
on the 4th of May, 1870, and then called Campbell, one
of the defendants, who testified that Jacob Sleeper was his
maternal grandfather, and that his mother's name was
Philopena, (one of the devisees named in her father's will,)
that his mother lived with her father on the property till
he died, and after his death she continued to live there
with her children, the defendants, till the house burned
down in 1840, and that his mother told him the possession
of the property came from his grandfather Sleeper. The
plaintiff himself then testified that no rent had been paid
him on the property since he owned it. It was then
agreed that at the time, and for some years prior to the
suit, the lot was unimproved, and there was not at the
time of suit brought, distrainable property on the premises
to countervail the rent, and the plaintiff then rested his
case.

Before considering the several rulings excepted to, we
shall notice a preliminary objection taken to the action by
the appellants, and then state our views of some general
legal propositions which must control our decision of the
case.

It is argued that this was a perpetual lease, and differs
in its character and terms from any of those referred to in
any of the cases which have been decided under the statute
of 4 *Geo.* 2, and does not fall within the provisions of that
Act. But the length of the term cannot affect the opera-
tion of the statute. The lease creates the relation of lessor
and lessee, or landlord and tenant, and the statute in
terms applies to every such case. It dispenses with a pre-
vious demand of rent and re-entry, and substitutes there-
for service of a copy of the declaration in ejectment, in all
cases where the landlord or lessor has right by law to re-
enter. This lease gives the right of re-entry if the rent
be in arrear for one year, "the same being first lawfully

demanded." In the case of *Doe vs. Alexander*, 2 *Maule & Selw.*, 525, the lease provided for re-entry in case of the rent being in arrear for a certain time and, "being lawfully demanded," and the Court, contrary to the opinion of Lord ELLENBOROUGH, held that the insertion of these words in the lease did not affect the operation of the statute, and that a demand was unnecessary. That case settled the law in England, and we find no substantial difference between the words "being lawfully demanded" and "being first lawfully demanded." In the construction of such an instrument the latter are included in the legal force and operation of the former.

Next, what is the effect upon the case of the fact that Jacob Sleeper assigned and took a re-assignment of the lease in 1818? It is proved he was in possession of the property from 1808, after the death of Shroud, up to 1818, but there was no tittle of proof offered tending to show that, during this period he held in any other right than as a *tort-feasor*. The only construction possible as to the nature of his possession is, that it was that of a trespasser or disseissor. Before the possession had ripened into a perfect title by the lapse of twenty years, he voluntarily administered upon the estate of Shroud, and assigns and takes to himself a re-assignment of this lease by solemn instruments under seal, which he places upon record, and in which the title of the lessor is carefully recited and recognized. By this he became the tenant of the lessor, and his holding thenceforth until his death, was consistent with the title of his landlord. He, and those claiming under him are, by this act on his part, and by these conveyances, estopped from denying that the relation of landlord and tenant was then created between him and the owner of the reversion. From the date of these conveyances he became tenant of the premises under the lease recited in them, and the case is to be treated in the light of this as a conclusively established fact, and as if posses-

sion had then for the first time commenced in Sleeper as such tenant. Such being the nature of the case, we take it that these propositions are firmly settled :

1st. When the relation of landlord and tenant has been created, the possession of the tenant is consistent with the title of the landlord and the mere non-demand and non-payment of rent, are not sufficient to bar the landlord's *title* whatever effect they may have, if long continued, upon his right to recover the rent.

2nd. Not only is the tenant precluded from relying on his possession to bar his landlord,.but also all persons who come in under, or derive possession from, the tenant in any manner however remotely.

In support of these positions reference may be made to the well considered case of *Jackson vs Davis,* 5 *Cowen,* 123, and also to *Brandter vs. Marshall,* 1 *Caines Rep.,* 394 ; *Angell on Limitations, sec.* 442 ; *Sanders vs. Lord Annesley,* 2 *Sch. & Lef.* 106 ; *Failing vs. Schenck,* 3 *Hill,* 344. In fact we have been able to find no case in which these principles are disputed. It is to be observed that this is not even the case of a tenant holding over after the expiration of the lease, or of a tenancy at will. The term had not expired at the time this suit was brought. Unquestionably those succeeding a tenant in possession of the premises under or through him, may show the relation has been dissolved, or set up an actual ouster of the landlord, and adverse holding thereafter ; but what is required to support this defense ? Possession in such cases is presumed to be in accordance with the title, and this presumption will hold until some notorious and unequivocal act of exclusion shall have occurred. Thus in the case of *Israel vs. Israel,* 30 *Md.,* 125, the Court in considering the case of tenants in common said, " the possession of one tenant in common is in contemplation of law, the possession of the others also, and it is necessary to prove an *actual ouster* to rebut this presumption," and this applies with equal

if not stronger force to the case of landlord and tenant. In *Gwynn vs. Jones' Lessee*, 2 *G. & J.*, 184, a case where adverse possession was relied on by a party claiming under the assignee of a lease, to defeat the ejectment of the reversioner, and where actual possession in him and those under whom he claimed had continued for nearly forty years, our predecessors said "we cannot perceive anything in the facts of the case that looks like a possession adverse to the title of the plaintiff, until the year, 1805, when upon the demand of Norris, Jr.," (the reversioner) "the possession was refused to be delivered to him by the defendant. When the land was enclosed by Sanders," (the orginal lessee) "he was confessedly the tenant of Norris the elder, and it is natural to suppose he fenced it in that he might have the greater enjoyment of it. That the enclosure was kept up by Webster" (the assignee of the lease,) "and his tenants with the same view, we must presume, where no attempt is made to prove an altered and adverse intention. If no rent was paid and the tenancy not expressly admitted, there is nothing to show that the possession was held *in hostility* to the rights of the landlord, and those claiming under him. In the absence of this proof nothing is to be presumed in favor of an adverse possession, and more particularly so where it commenced rightfully and with the consent of the owner. The mere holding over after the term ended is not evidence of an adverse possession, and the possessor will be regarded as the tenant at will of the landlord, unless he can show that since the expiration of the lease he has held *forcibly* or has acquired a title paramount to that under which the possession was originally taken. Something more than a *mere intimation of hostility* in such case is necessary, and the possessor coming in under the assignee of the lease, as in this case, must be supposed to hold his title." So also in the early case of *Lisle vs. Harding,* decided in the *Common Pleas* in 1747, (*Bull. N. P.*, 104,)

the Court said " if a cottage were built at first by permission of the lord of a manor, or any acknowledgment of his title has since been made (though it were a hundred years since,) the *Stat. of Jac.*, 1, *ch.* 16, will not run against him ; for the possession of a tenant at will for any assignable lapse of time is no disseisin ; there must be a *tortious ouster.*"

We cite these cases among many others to the same effect, to show that what will amount to and be proof of adverse possession in ordinary actions of ejectment between strangers, has no application to the case before us. In cases like this there must be, at least, some proof of an actual ouster to rebut the presumption that the possession was in accordance with the title, and proof that does not come up to this is not evidence of adverse possession. Here the defendants' ancestor was tenant of the premises, and they and those through whom they claim, succeeded to the possession after his death, and their sole defence to the landlord's action is adverse possession. Now tested by the requirement and standard above stated, we are clearly of opinion the evidence offered by the defendants in the first seven exceptions, was properly rejected. We shall notice these exceptions briefly.

1st. We cannot perceive what possible relevancy the inventory of Sleeper's estate returned by his executrix, or the fact that no inventory was returned by Sleeper as administrator of Shroud, can have to the case. Neither the right of recovery or defense could be affected by such proof. It was rightly refused and this disposes of the first, fifth, and sixth exceptions.

2nd. One witness was asked whether the Sleepers claimed the property as their own absolute property in any conversation with him, or did they admit the claim of any other person to the property in conversations with him about it? and another, did Mrs. Campbell, (the mother of the defendants) while in possession of the pro-

perty in a conversation with him, claim the property as her own fee simple absolute property? The Court refused to permit these questions to be answered, unless the plaintiff or some one under whom he claims was present at the time of these conversations. There was clearly no error in this ruling. Such conversations or assertions of claim of title were not evidence of adverse possession in this case, unless brought home to the knowledge of the landlord. Parties in possession of leasehold property, and deriving their possession in the mode in which these defendants admittedly did, cannot set up adverse possession by such proof as this. This disposes of the second and fourth exceptions.

3rd. Another witness was asked "do you know whether the possession of the property by the Sleepers was notorious, adverse and exclusive and accompanied by the claim of absolute title? what was the notorious, general reputation in the community as to the Sleepers ownership of this property? and still another, "do you know whether the possession of the property by the Sleepers was notorious, adverse, exclusive and accompanied by the claim of absolute title?" The Court also refused to permit these questions to be answered. Without stopping to consider technical grounds upon which both these rulings might well be sustained, we place their correctness upon the substantial ground already stated. There was no offer to prove that this claim of absolute title was ever made in the hearing of the plaintiff or of any one under whom he claimed. The record shows the defendants' counsel admitted he could not show this, and he did not even offer to prove that the then owner of the reversion was a resident of Baltimore city, or of the State, so that this alleged general reputation of ownership in the community, or notoriety of possession, or the alleged claim of absolute title could possibly have reached him. Without some further proof or offer of proof on this point, such testimony was wholly inadmissible to establish or as tending to establish adverse posses-

sion as against the landlord.   This disposes of the third and seventh exceptions.

The Court having rightly rejected this proffered testimony, there was nothing left for it to do but to dispose of the prayers as it did, by rejecting those of the defendants, and granting that of the plaintiff.   We have shown that non-demand and non-payment of rent cannot affect the case, and there were no other facts before the jury which could possibly affect the right of recovery, inconsistent with those left to their finding by the instruction granted at the instance of the plaintiff.   By this the jury were instructed that if they found the execution and delivery of the lease from Goodwin to Shroud, and the assignment of it from Sleeper as administrator of Shroud to Peters, and from Peters to Sleeper, and the grant of administration on Shroud's estate to Sleeper, and that Sleeper died in possession of the property in controversy leaving a will which was admitted to probate, and that letters testamentary thereon were granted to his widow and executrix, and that by this will he devised this property or this with other property, and that his wife and daughter the mother of the defendants were in possession, living with their said father and husband before his death, and so remained until the death of the widow, and the said mother with her children continued in possession until her death some nineteen years since, and shall further find the execution and delivery of the deeds by which the reversion was conveyed to the plaintiff, and that more than one year's rent reserved in the lease was in arrears when the suit was instituted, and that there was not at the time of the institution of this suit and for some time before, sufficient distrainable property on the premises to countervail the rent due, then they should find for the plaintiff.   The plaintiff's right to recover upon this state of facts, cannot, in our opinion, be reasonably questioned.

*Judgment affirmed.*

(Decided 1st July, 1874.)

STEWART. J., filed the following dissenting opinion :

This ejectment was brought by the plaintiff, claiming that by the devolution of the reversion upon him, he was entitled to recover the possession of the property which Lyde Goodwin had leased, by deed, bearing date the 1st of May, 1801, for a term of ninety-nine years, to John Shroud, who died in possession, in the year 1806 or 1807.

The defendants claim the property by adversary possession, from acts of exclusive user and ownership on the part of their ancestors and themselves, from the year 1808 to the institution of the suit.

It appears from the testimony that Jacob Sleeper had possession of the property about the year 1808, and occupied it until his death, in the year 1818.

Since his death his widow, Hannah Maria Sleeper, continued to occupy it until her death, and after that her daughter, Philopena, afterwards Mrs. Campbell, resided upon the property, with her children, the defendants, until the house on the premises was burned down, in the year 1840.

There was no proof that any rent was ever demanded or paid by the occupants.

The counsel for the defendants, in his brief and argument, has insisted that by the terms of the lease providing that the rent should be first lawfully demanded, before the right of re-entry, or forfeiture, could accrue; that this lease was not within the meaning and scope of the Act of *4th Geo.* 2, *ch.* 28, *sec.* 2 ; or the Act of our General Assembly of 1872, ch. 346, (which, in abolishing the previous forms and fictions, as to actions of ejectment, has, in connection therewith, substantially re-enacted the provisions of the English Statute, which had, in fact, been in operation within the State,) rendering an actual demand of the rent in arrear, and re-entry, unnecessary, to enable the plaintiff to maintain the action of ejectment. The possession of the tenant, without payment of rent, did not

necessarily bar the lessor's title. He could waive the demand of rent and right of re-entry and forfeiture, without its operating to extinguish the rent, or defeat his right.

The statutes were intended, without doubt, to reach cases where the possession was vacant, as well as when the property was occupied, and there can be no question that they dispense with the formality of first demanding the rent. See *Walter vs. Alexander*, 2 *Gill*, 204.

It did not appear in what way Jacob Sleeper acquired and held the possession of the property from 1808 to 1818.

About the year 1818, he administered on Shroud's estate, and undertook to make sale of Shroud's term to Henry Peters, who conveyed the property back to Sleeper.

The plaintiff offered in evidence the will of Sleeper, which, it is conceded, embraces the property in dispute, but it does not appear from the tenor of the will, to what extent or in what way the property was held by Sleeper. If Jacob Sleeper had died intestate possessed of the lands, this would have been *prima facie* evidence of title in fee, in his heirs, by descent. His devise of the lands, without description of the interest he held therein, affords presumptive evidence that he held the fee-simple therein.

If he had acquired the possession of the property under the lease to Shroud, it is well settled he would be estopped from disputing the lessor's title. In the absence of proof that he acquired the possession in pursuance of the law, the fact that he purchased the title of Shroud is not conclusive acknowledgment that he held on that right, but it is a circumstance to be considered and determined by the jury in ascertaining the nature and character of his possession and claim.

With what intention or by what right a person entered into land and possessed it, and to what extent, are facts proper for the jury—that the deeds between Sleeper and Peters were not conclusive evidence of the fact that Sleeper

held the possession thereunder, but that it was competent for the defendants to offer evidence to rebut and destroy any presumption that might arise therefrom, and to show that he took and held possession of the property under other title, cannot be questioned. *Helms' Lessee vs. Howard*, 2 *H. & McHenry*, 76; *Sutton vs. Crane*, 10 *G. & J.*, 455; *Adams on Ejectment*, 505, *Appendix*.

If Sleeper did not acquire the possession under and by virtue of the lease, but by some other title, or by disseisin of the owner, and did in fact claim the property absolutely as his own, the mere fact that he devised the property, without reciting in what way it was acquired, to the ancestors of the defendants, and that they claimed the property through him, could not conclude the defendants from offering evidence of such facts.

The plaintiff having offered the will of Sleeper and the letters testamentary on his estate to his widow, it was competent for the defendants to rebut such testimony by shewing the manner in which Sleeper held and claimed the property, by any pertinent and material testimony, to be considered by the jury, and the offer of the inventory in the first exception was admissible, and the Court erred in its exclusion. *Hammond's Lessee vs. Inloes*, 4 *Md.*, 173.

The declaration of Mrs. Campbell as to her ownership, proposed to be offered by the defendants in the 4th exception, ought to have been admitted.

If they formed a part of her conversation as to the possession of the property, introduced by the plaintiff, the whole conversation could be given in evidence. But as isolated statements of her claim, or in what way she did claim, they were competent to be introduced for the consideration of the jury. Whether they were of such nature as to be brought home to the knowledge of the defendants, the jury must determine from all the evidence.

The offer in the 5th exception to show that no inventory of any property belonging to John Shroud was

returned by Sleeper, his administrator, ought to have been admitted, for the determination of the jury as to its weight and effect, if any, in regard to the bearing and tendency of the deed from Sleeper to Peters, &c., and there was error in its exclusion.

The offer of the defendants in the sixth exception, to show that the property mentioned in the will of Sleeper was not returned and included by his executrix, was competent rebutting testimony, to meet any effect to be produced upon the minds of the jury by the introduction of Sleeper's will, and the administration on his estate on the part of the plaintiff, and the Court erred in its exclusion.

The Court erred in its refusal of the proof offered by the defendants in the second exception. The possession of the property, with claim of title thereto, is presumptive evidence of title—possession accompanied with a claim of ownership in fee, is *prima facie* evidence of such an estate ; declarations accompanying the act of possession, whether in disparagement of the declarant's title, or otherwise qualifying his possession, if made in good faith, should be received as part of the *res gestœ.* 1 *Greenl. Ev., sec.* 109. The proposed testimony as to the claim of the Sleepers to the property was admissible. The same may be said as to the proof offered in defendant's third and seventh exceptions, so far as it referred to the claim of title by the defendants ; but that was so connected with inadmissible matter as to render the evidence, as proposed, incompetent. The mere opinion of the witness, under the circumstances, as to whether Sleeper's possession was adverse, was inadmissible.

The witness could testify as to facts of the claim of the property, its actual, visible, exclusive and continuous possession by the Sleepers ; and any acts of user, or exclusive ownership, or other relevant facts to show the character of the possession from which the deduction could be made by the Court or jury, as to whether the possession of the Sleepers was such as might afford the presumption that

the owner knew that it was hostile to his title. The plaintiff's objection to the admission of the testimony, that it must also be shown that the plaintiff, or some one under whom he claims, was present, or heard the conversation, or claims made, as specified in the second, seventh and fourth exceptions, would restrict the proof of the defendants' adversary possession within too narrow limits. All that the law requires to raise the presumption of title from possession, is proof that the possession was actual, adverse, visible, notorious, exclusive and continuous, and under claim of title. *Casey's Lessee vs. Inloes,* 1 *Gill,* 505 ; *Barker vs. Lessee of Swan,* 32 *Md.,* 361.

The possession must be such that the owner may be presumed to know that there is a possession adverse to his title—his actual knowledge is not necessary, it is sufficient if, by ordinary observation, he might have known. *2nd Greenleaf's Ev.,* sec. 430. If the rule prescribed by the ruling of the Court below, that actual notice is necessary ; there would be no further occasion to show the other characteristics of the claim, which have been substituted for notice. The latter question in the third exception, as to the general reputation of the community, as to Sleeper's ownership, was objectionable, as title could not be established by reputation.

For the defects referred to in the third and seventh exceptions, there was no error in refusing the testimony as proposed therein.

Whether or not, the possession of the defendants was adverse, and the plaintiff, or some one under whom he claims, had notice, or may be presumed, from the circumstances, to have received notice, are facts to be determined by the jury, and not by the Court. *Adams on Ejectment,* 505, *Appendix.*

Disseisin does not necessarily imply a forcible entry, or actual ouster by violence or fraud ; in cases of vacant possession a simple tortious entry and open exclusive

possession, under claim of adverse title, are equivalent to such entry and ouster.

An actual ouster may be proved, or inferred from circumstances which are matters of evidence, to be left to a jury ; and it is not necessary to prove an actual or personal ejection by violence. *Fisher vs. Parker, Cowper's Rep.*, 219.

The plaintiff's prayer was objectionable for sundry reasons, and ought not to have been granted. It was calculated to mislead the jury, and to withdraw from their consideration the force and effect of the testimony, and to determine the same by the Court.

Conclusive effect and operation was given to the deeds from Sleeper to Peters, and from Peters back to Sleeper ; and to Sleeper's possession, and the effect of his will, and as to the possession of Hannah Sleeper, widow of Jacob Sleeper, and her daughter Philopena. The prayer assumed that the said possession was in accordance with the deed from Lyde Goodwin to John Shroud, and excluded from the jury all consideration of an adversary possession, and claim of title, *aliunde.* See *Davis vs. Davis,* 2 *H. & J.*, 209.

If the possession of Sleeper had been acquired under the deed from Goodwin to Shroud, the plaintiff would not be barred of his right to the property by the simple possession of the defendants, accompanied by a claim of title, if the plaintiff, or some one under whom he claims, had no knowledge of the adversary claim of title ; but this was a matter depending upon proof as to whether the possession had been acquired in that way, or under some permission from the tenant. *Callis vs. Tolson's Ex'rs*, 6 *G. & J.*, 80.

The defendants' prayers were all properly rejected. They were founded upon the erroneous theory that the mere possession and claim of absolute title to the property, and the non-payment of any rent for the period specified,

extinguished the rent, barred the plaintiff's title by limitation, and were sufficient to establish a valid title in the defendants.

" If no rent was paid and the tenancy was not expressly admitted, there must be some evidence to show that the possession was held in hostility to the rights of the lessor." *Gwynn vs. Jones,* 2 *G. & J.,* 184.

" To give the character of adverse holding, there must be some positive act, and not merely a failure to recognize the rights of the party. *Matthews vs. Ward's lessee,* 10 *G. & J.,* 457 ; *Van Bibber's lessee vs. Frazier,* 17 *Md.,* 451.