# SAFE DEPOSIT AND TRUST COMPANY, TRUSTEE, ET AL. *vs.* THEODORE MARBURG.

*Non-Payment of Ground Rent for Twenty Years Vests Fee Simple Title in Tenant.*

The purchaser, under an agreement for the sale of fee simple property, objected to the title offered upon the ground that it was leasehold property, because, about one hundred years ago, the land had been leased subject to a ground rent of one cent per annum. This rent had not been demanded or paid for more than twenty years. Code, Art. 53, sec. 26 (Act of 1884, Chap. 502), provides that whenever there has been no demand or payment for more than twenty consecutive years of any specific rent reserved out of a particular lot under any form of lease, such rent shall be conclusively presumed to have been extinguished, and the landlord shall not thereafter set up any claim thereto, or to a reversion in the lot, or have the right to institute any suit, action or proceeding whatsoever to recover said rent or said lot. *Held*, that this statute is valid and constitutional, since the Legislature has the power to change the rules of evidence, and to pass laws which may result in vesting title in those holding land by adverse possession, provided the former owners have a reasonable time after the passing of such law in which to assert their rights.

*Held*, further, that under this statute, where there has been no demand or payment of rent by the lessee for more than twenty consecutive years, not only is the rent presumed to have been extinguished, but the interest of the landlord is barred, and his fee simple title is vested in the tenant in the same manner as if the land had been held by adverse possession for the statutory period.

*Decided March 23rd, 1909.*

Appeal from the Circuit Court of Baltimore City (HEUIS-LER, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS and HENRY, JJ.

*Charles McH. Howard* (with whom was *S. Tagart Steele* on the brief), for the appellants.

*John E. Semmes, Jesse N. Bowen* and *John E. Semmes, Jr.,* for the appellee, submitted the cause on their brief.

BOYD, C. J., delivered the opinion of the Court.

The Safe Deposit and Trust Company of Baltimore, as trustee under the will of Martha E. Williams, reported to the lower Court a sale to the appellee of an undivided half interest "in and to the fee simple and irredeemable ground rent of $600 per annum issuing out of a lot of ground" on Charles street in Baltimore. The sale was dependent upon the vendors of the whole rent being able to convey a good and merchantable title. Exceptions were filed by the purchaser on the ground that the rent of $600.00 was a sub-rent and leasehold property, and hence the vendors could not give the purchaser a fee simple title to it, as contracted for. An order was passed sustaining the exceptions and setting aside the sale, and from that order this appeal was taken.

On March 5, 1806, Robert Sinclair leased to Francis Hollingsworth a lot of ground located at the southwest corner of Charles and Mulberry streets, fronting 75 feet on Charles street, and created thereon an irredeemable ground rent of one rent per annum. On the 11th day of the same month Francis Hollingsworth endeavored to apportion the ground rent of one cent by conveying the upper half of the lot subject to a ground rent of one-half cent, and conveying the lower half to Charles Worthington subject to the same rent. Subsequently Robert Sinclair, who owned the fee simple interest in the lot south of the lower half, leased to Charles Worthington

a small triangular strip of ground, creating an annual irredeemable rent of one cent on it. That strip of land and the lower half of the original lot constitute the property on which the rent which the appellee agreed to purchase is reserved.

Through mesne conveyances the lot in question became vested in the heirs at law and representatives of Nathaniel F. Williams, among whom was Martha E. Williams, who had an undivided half interest therein. On March 10, 1866, she and the other heirs at law and representatives of Nathaniel F. Williams leased it, creating thereon a ground rent of $600.00, payable semi-annually. It is admitted that the persons entitled to demand payment of the rents of one cent each in the respective leases from Robert Sinclair to Francis Hollingsworth and to Charles Worthington, and to make re-entry for non-payment of the same, were under no legal disability to make such demand and re-entry, and that said rents had not been paid or demanded for a period of more than twenty years before the proposed sale.

The question therefore is whether under and by virtue of the Act of 1884, Ch. 502, now section 26 of Art. 53 of the Code, the lessor's (Sinclair's)) reversion is barred and the original leasehold title converted into a fee simple. That Act is as follows: "Whenever there has been no demand or payment for more than twenty consecutive years of any specific rent reserved out of a particular lot, or any part of a particular lot, under any form of lease, such rent shall be conclusively presumed to have been extinguished, and the landlord shall not thereafter set up any claim thereto, or to the reversion in the lot out of which it issued, or have the right to institute any suit, action or proceeding whatsoever to recover said rent or said lot," and then goes on to give a landlord who is under a legal disability, when the period of twenty years shall expire, two years after the removal of such disability within which to assert his rights.

There would seem to be no doubt that the Legislature intended by the Act of 1884, not only that the rent shall be conclusively presumed to have been extinguished, when there

has been no demand or payment for more than twenty consecutive years, but that the reversionary interest of the owner of the fee should be barred and terminated. It expressly said that the landlord shall not thereafter set up any claim to any reversion in the lot out of which the rent issued, or have the right to institute any suit, action or proceeding whatsoever to recover said lot. It manifestly was not intended to simply bar the rent already due, as sec. 1 of Art. 57 of the Code was also amended by the Act of 1884, so as to require all actions to recover rent in arrears to be commenced within three years from the time the cause of action accrued, but this section of the Act now under consideration has a much wider scope than that, and is in effect supplemental to sections 1 and 2 of the Statute of 21 James I, Ch. 16, which sections are in force in this State.

It had been held in *Campbell* v. *Shipley,* 41 Md. 81, that: "When the relation of landlord and tenant has been created, the possession of the tenant is consistent with the title of the landlord and the mere non-demand and non-payment of rent are not sufficient to bar the landlord's *title,* whatever effect they may have, if long continued, upon his right to recover the rent." The early case of *Gwynn* v. *Jones,* 2 G. & J. 184, was quoted at length, wherein it had been said, amongst other things, that: "If no rent was paid and the tenancy not expressly admitted, there is nothing to show that the possession was held *in hostility* to the rights of the landlord and those claiming under him. In the absence of this proof nothing is to be presumed in favor of an adverse possession, and more particularly so where it commenced rightfully and with the consent of the owner." Other cases to the same effect might be cited, among which is that of *Myers* v. *Silljacks,* 58 Md. 319, which was decided shortly after the Legislature adjourned in 1882, and possibly hastened the passage of the Act now under consideration. However that may be, it is well known from cases in this Court and otherwise that the complex system of ground rents in this State often rendered titles unmarketable, although in some instances the rents had

not been collected for many years, and some of them were for such a nominal sum and were owned by so many persons, that it was difficult to obtain the reversions for anything like a reasonable amount as compared with the rent reserved. But, as under the laws of this State a leasehold interest is personal property, and there are oftentimes many subdivisions of the land originally leased, with sub-leases existing, titles were not only made uncertain, but values were materially affected. There were therefore urgent reasons for relief by legislation, and we can have no doubt that that enacted by what is now sec. 26 of Art. 53 was not only intended to, but did have the effect of extinguishing the reversionary interest when there was no demand or payment of rent for more than twenty years, unless there be some constitutional objection to it which renders it inoperative.

It is true that at one time the constitutionality of such statutes was questioned, but there is no longer any doubt about the right of the Legislature to pass laws which may result in vesting good titles in those holding lands by adverse possession—provided, of course, the former owners have a reasonable time after the passage of such laws within which to assert their rights. Under conditions existing in this country such laws were essential for quieting titles. As we adopted the English statutes which were in force on July 4, 1776, and which by experience had been found applicable to our conditions, and as that of 21 James I, Ch. 16, was held to be in force here, it was not necessary for the Legislature of Maryland to pass such a statute, but it has from time to time passed laws which have changed that statute and which prescribe the kind of evidence required to establish adverse possession. For example, prior to the Act of 1852, Ch. 177, actual enclosure for twenty years was essential to prove possession of land by a tort feasor, but that Act declared that actual enclosure should no longer be necessary. In *Thistle* v. *Frostburg Coal Co.,* 10 Md. 129, our predecessors said that it was not "within the scope of the legislative power to give to a law the effect of taking from one man his property and giving

it to another, by any new rule of tenure, retroactive in its character," and it was held that the Act of 1852 could not be given a retroactive operation, but the Court said: "It is equally clear that it was within the power of the Legislature to alter and remodel the rules of evidence and remedies, to which parties claiming title and possession of land might resort, and therefore a law would be constitutional which merely declared that evidence which would be sufficient to support a claim to title in equity might be made availing for the same purpose at law."

So the Act of 1894, Ch. 661 (now sect. 7 of Art. 57) changed the statutes of James I by enacting that the period within which any suit or action may be brought under any statute of limitations in force in this State should not be extended because the plaintiff was a *feme covert,* imprisoned or beyond the seas, or out of the jurisdiction of the State at the time of the accrual of the right, title or cause of action. That Act did not provide for its taking effect at a future time, and we held in *Baumeister* v. *Silver,* 98 Md. 418, that when a non-resident had a vested right to sue to recover land held adversely for more than twenty years, the Legislature could not take away the right without allowing a reasonable time within which to bring his action, and hence the Act of 1894 should be so construed as to allow a non-resident ten years after its passage within which to bring suit—a non-resident having, under the construction placed by our predecessors on the Statute of James, ten years within which to institute an action after coming into the State, although the property might have been held adversely by the defendant for twenty or more years. Since June 1st, 1904, non-residents have under that Act been in the same position as to the right to sue for the recovery of lands as residents, and have no advantage over the latter by reason of their non-residence.

In this case more than twenty years had elapsed since the passage of the Act of 1884, during which time the owners of the reversion could have asserted their rights, but not having done so there can be no more reason why they shall not be

barred than there would be in case a third person had been in adverse possession for the period fixed by the statute. The difficulty previously was for the tenant to establish an adverse holding against his landlord, because his possession was not presumably adverse, and was in law presumed to be under the right by which he took possession—at least in the absence of some satisfactory evidence to the contrary. But as a demand for rent is the natural and usual course for a landlord to pursue, if he is entitled to it, and as the payment of rent is a most effective recognition of the landlord's title, and is what is usually required when a rent is reserved, the Legislature enacted that the failure to demand or to pay rent for twenty years or more should be a conclusive presumption of its extinguishment, and in effect sufficient to bar the landlord's title, which as the law stood in *Campbell* v. *Shipley, supra,* was held not to be sufficient. It was an alteration of the rules of evidence, such as was held in *Thistle* v. *Frostburg Coal Company* to be within the power of the Legislature, and the character of evidence prescribed was not only not unreasonable, but was such as would be most effective and probably the least misleading that could be adopted, when the relation of landlord and tenant had existed.

Although the law will not ordinarily permit a tenant in possession to dispute his landlord's title, circumstances may arise and conditions exist which require a change of the common law rule, and such was doubtless the opinion of the Legislature when it passed the Act of 1884. When it did pass a law which prescribed the character of evidence which would be sufficient to show an adverse holding by a tenant, when such evidence is produced there can be no reason why such adverse holding of the tenant should not be given the same effect as is given to other adverse possessions. The effect of adverse possession is thus stated in 1 *Am. & Eng. Ency. of Law,* 883: "By adverse possession of land for the statutory period of limitation the adverse holder acquires a title in fee simple which is as perfect as a title by deed. Its legal effect is not only to bar the remedy of the owner of the paper title,

but to divest his estate and vest it in the party holding ad-
versely for the required period of time, so that he may main-
tain an action of ejectment for the recovery of the land even
as against the holdler of such paper title who has ousted him."
That doctrine was early recognized in this State. *Armstrong*
v. *Risteau,* 5 Md. 256. See also *Cooley's Const. Lim.* (365),
1 *Cyc.* 1135. It has often been held in this State that titles
so acquired are marketable when the fact as to adverse pos-
session is clear, and purchasers have been required to accept
them even in cases of religious corporations holding in con-
travention · of the Bill of Rights. See *Regents* v. *Calvary
Church,* 104 Md. 635, where some of the earlier cases are
cited.

So without pursuing that question further, there can be·
no doubt that the running of the statute may not only affect
the remedy of the holder of the paper title, but may extin-
guish his title, vest title in fee in the adverse holder, and the·
constitutionality of statutes having such result is no longer
an open question. The effect of the Act of 1884 is to vest·
the title of the former landlord in the tenant, when it is·
shown that no rent has been demanded or paid for the statu-
tory period, and when that is done the tenant's rights are
similar to those vested in one holding by adverse possession
under the Statute of James I.

· We do not understand it to be denied that the Legislature
could validly extinguish the rent. But what sort of a holding
would the landlord have if he was forever barred from col-
lecting rent, from setting up any claim to the reversion and
from instituting any suit, action or prceeding whatsoever to
recover said rent or said lot? It would seem to follow, under
our system of ground rents, that if the rent is forever barred
the fee would vest in the leaseholder. That was implied, if·
not· expressly decided, in *Jones* v. *Rose,* 96 Md. 483. There
the question was whether the purchaser could obtain a fee
simple title inasmuch as an old ground rent had once been
upon the lot, which was claimed to be still outstanding. ·
JUDGE·McSHERRY said, in entering upon a discussion of the

case: "Have the vendors a fee simple title? If there is no outstanding ground rent on the premises they confessedly have such title. So the only question is, is there an outstanding ground rent on the property?" The Court held that all of the land that had originally been subject to a ground rent had been exonerated from it except lots 19, 20 and 21, by reason of acts of the parties which estopped them from denying that the rents had been apportioned and placed upon those three lots. A deed was afterwards made to the owner of those three lots by those who had become the owners of the reversion, and the Court said: "All the property, except lots 19, 20 and 21, had already been exonerated from the burden of the ground rent by virtue of the estoppel above adverted to, and therefore it became necessary only to release the owner of those three lots if the rent was intended to be wholly extinguished. When the owner of those lots was released by the deed of eighteen hundred and fifty-seven the original rent was completely destroyed, and lot number four" (being the one in controversy) *"was then, if not before, held in fee."* That case therefore announced the doctrine that when the rent was extinguished, although merely by estoppel as to the lot in question and by a deed as to the three lots, the lot was held in fee.

When we speak of redeemable grounds rents we mean redeemable from rent, and the very object in redeeming them is to relieve them from the rent and thereby acquire the fee. Under this statute, when there has been no demand or payment for more than twenty years, it is conclusively presumed that the rent has been extinguished—that is to say, there is a presumption that it has been extinguished by a deed, just as there is the presumption of a grant in ordinary cases of adverse possession.

The case of *Lewis* v. *Kinnaird,* 104 Md. 653, while differing in some respects from this, is at least very analogous to it. The property in that case was sold as *leasehold* property, subject to a ground rent of $37.50 per annum, whereas it was alleged that it was a *sub-leasehold* property. There was

an original lease of a lot which was subject to a ground rent
of two pepper corns, if demanded. We need not refer to the
rent of $48.00 which was mentioned in the opinion and was
created under another lease as that was held to be extin-
guished, but there was a lease of part of the original lot
which reserved $37.50 rent per annum. JUDGE BRISCOE, in
speaking for the Court, said: "As to the objection to the title
because of the 'ground rent of two pepper corns if demanded,'
we will say: The rent was created more than seventy-five years
ago, and there is not a particle of evidence in the record to
show that it has ever been demanded. If, however, the rent
was of a substantial value, it would be barred by sec. 26 of
Art. 53 of the Code," and he then stated the substance of the
statute. It is sought to distinguish that case from this by
pointing out the fact that the property was there sold as
*leasehold* property, and hence it would not change the char-
acter of holding, even if it was *sub-leasehold* property. The
decision, however, was not placed on that ground, but it in
effect held that the rent of "two pepper corns if demanded"
was presumed to have been extinguished and hence the pur-
chaser could get just what was offered for sale—leasehold
and not sub-leasehold property. If it had been necessary, in
order to acquire the fee, not only to redeem the ground rent
of $37.50, but also the two pepper corns, it might have sub-
jected the purchaser to much more expense and inconveni-
ence than his purchase contemplated, as the heirs of a rever-
sioner of a lease of that kind might be numerous and scattered,
and hence if it had been regarded as still in force it would
have required the Court to at least ascertain the facts con-
cerning it. But we held the title to be such as the purchaser
could be required to take, notwithstanding he objected to sub-
leasehold property, and we so held because we thought the
rent for the two pepper corns had been extinguished, or at
least was not shown to be still in existence.

We do not deem it necessary to discuss at any length the
Pennsylvania cases which were cited. It is true that in *Bid-
dle* v. *Hooven,* 120 Pa. St. 221, it was held that the statute

of that State affected only the remedy, and it was added, "if it meant more it would be void for the excess." That statute is not as broad in some respects as ours and yet we are satisfied for the reasons already given that ours is valid. Ground rents in Pennsylvania differ from those in this State, as is shown by the articles on the subject in 14 *Am. & Eng. Ency. of Law*, 1121, and in 20 *Cyc.*, 1369, but it would serve no good purpose to discuss the differences. We would only add that if that Court intended to hold that such a statute as ours, and giving it such effect as we have above, is unconstitutional, we cannot concur with it, notwithstanding the high esteem in which that Court is held by us and other Courts.

We are of the opinion, therefore: 1st. That by virtue of sec. 26 of Art. 53 of the Code (Act 1884, Ch. 502), the rent reserved in the leases from Robert Sinclair, herein referred to, have been extinguished, and, as a result of that, a. fee simple title vested in the owners of those leasehold interests upon the expiration of the statutory period provided in the Act.

2nd. That the Act was validly enacted, and the appellants can convey a fee simple title to the appellee.

As the result of those conclusions, the order sustaining the exceptions and setting aside the sale must be reversed, but we will direct the costs to be paid by the trustee out of the proceeds of sale.

> *Order reversed and cause remanded, the costs to be paid by the trustee out of the proceeds of sale.*