*Harvey, et al. v. Sines, et al.*, No. 0691, September Term 2015

**HEADNOTES:**

**DORMANT MINERAL INTERESTS ACT – CONSTITUTIONALITY – DUE PROCESS - RETROSPECTIVITY**

Where mineral rights and surface rights have been severed, law that allowed surface owners to petition court to terminate mineral interest that had not been used or recorded within the previous twenty years was valid under Article 24 of the Maryland Declaration of Rights and Article III, Section 40 of the Maryland Constitution, because law did not operate retrospectively. The law did not impermissibly impact the reasonable reliance and settled expectations of mineral interest owners because the continued non-use of the mineral interest demonstrated little reliance on the property and because the law provided procedural safeguards and fair notice in the form of a grace-period before petitions could be filed.

**DORMANT MINERAL INTERESTS ACT – CONSTITUTIONALITY – DUE PROCESS – VESTED RIGHTS**

Severed mineral interest constituted a property right, and, thus, a vested right.

**DORMANT MINERAL INTERESTS ACT – CONSTITUTIONALITY – DUE PROCESS – VESTED RIGHTS**

The law satisfied due process as required by Article 24 of the Maryland Declaration of Rights because, similar to adverse possession, the Act allowed a person to, after twenty years of neglect, file an action analogous to a petition to quiet title, which allowed the land and minerals beneath it to be put to beneficial use.

**DORMANT MINERAL INTERESTS ACT – CONSTITUTIONALITY – TAKINGS**

Termination of dormant mineral interest did not constitute a taking without just compensation. The General Assembly, under the State's police power, has some ability to regulate and restrict the rights of private property owners without providing just compensation—including doctrines such as adverse possession, abandonment, and escheat, and this legislation regulating dormant mineral interests.

UNREPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 0691

September Term, 2015

_____

MARY HARVEY, *et al.*

v.

JOSEPH SINES, *et al.*

_____

Krauser, C.J.,
Berger,
Zarnoch, Robert A.,
   (Retired, Specially Assigned),

JJ.

_____

Opinion by Zarnoch, J.

_____

Filed: June 2, 2016

* The Honorable Christopher Kehoe did not participate in the conferencing or adoption of this opinion.

The opening of the Marcellus Shale in the late-2000s spawned a resurgence in natural resource extraction across the Northeast and Mid-Atlantic regions, including Western Maryland. In 2010, the General Assembly enacted the Maryland Dormant Mineral Interests Act, now codified at Section 15-1201, *et seq.* of the Environment Article ("Env."), Maryland Code (1982, 2014 Repl. Vol.), to allow surface owners to terminate severed mineral interests that had gone unused for twenty years or more.

Toward the end of 2014, Joseph L. Sines and Sandra S. Sines ("the Sineses"), appellees, brought an action in the Circuit Court for Garrett County to terminate an undivided half-mineral interest owned by the descendants of Henry B. Harvey—Mary Harvey and Patricia Sue Lannom née Harvey ("the Harveys"), appellants. After the parties filed cross-motions for summary judgment, and without a hearing, the court found no material facts in dispute, and entered an order terminating the mineral interest of the Harveys.

The Harveys appealed to this Court and present the following question for our review, which we have rephrased:

> Whether the Dormant Mineral Interests Act is unconstitutional under Article 24 of the Maryland Declaration of Rights and Article III, Section 40 of the Maryland Constitution?[1]

We hold that the Maryland Dormant Mineral Interests Act is constitutional because it

---

[1] The Harveys, in their question presented, also mention Article 19 of the Maryland Declaration of Rights (right of access to the courts) in their questions presented; however, they make no other reference to Article 19, and make no argument in support of their contention, so we do not consider the issue.

does not retroactively impair vested rights, nor does it take property without just compensation. We affirm the decision of the circuit court.

## BACKGROUND

### A. The Maryland Dormant Mineral Interests Act[2]

The General Assembly passed the Maryland Dormant Mineral Interests Act ("the Act") by a unanimous vote in each house during the 2010 legislative session.[3] *See* 2010 Laws, ch. 268 (S.B. 288), ch. 269 (H.B. 320). The Act created a new cause of action, allowing a surface owner of real property subject to a mineral interest to terminate a dormant mineral interest.[4] Env. § 15-1203(a)(1). The action is "in the nature of and

---

[2] During the 1960s, legal scholars identified "multiplicity of ownership" as a barrier to the development of mineral resources, resulting in mineral interests whose owners are unknown or unavailable, and interests whose owners are uncooperative. *See* James C. Roberton, *Abandonment Of Mineral Rights*, 21 Stan. L. Rev. 1227 (1969); Ernest E. Smith, *Methods for Facilitating the Development of Oil and Gas Lands Burdened with Outstanding Mineral Interests*, 43 Tex. L. Rev. 129 (1964). These scholars recommended, among other things, a statutory solution to the problem in the form of a dormant mineral interests act, like the one at issue here. *But see* Joshua Elias Teichman, *Dormant Mineral Acts and* Texaco, Inc. v. Short*: Undermining The Taking Clause*, 32 Am. U.L. Rev. 157 (1982) (criticizing dormant mineral interests acts as violations of the Takings Clause of the Fifth Amendment to the U.S. Constitution). Many states have since adopted dormant mineral interests statutes. *See* Clearing Land Titles § 10:1, *et seq.* (3d ed.).

[3] The legislation had previously been introduced in the 2009 session, and had been unanimously approved in the House of Delegates, but failed to receive a vote in committee in the Senate. *See* H.B. 748. A Senate bill, S.B. 775 (2009), also died.

[4] The definition of a "mineral" includes: gas, oil and oil shale, coal, gaseous, liquid, and solid hydrocarbons, cement materials, sand and gravel, road materials, and building stone, chemical substances, gemstone, metallic, fissionable, and nonfissionable ores, and colloidal and other clay, steam, and geothermal resources. Envir. § 15-1201(b).

require[s] the same notice as is required in an action to quiet title as set forth in § 14-108 of the Real Property Article."[5]  Env. § 15-1203(b)(1).  "A court order that terminates a mineral interest merges the terminated mineral interest, including express and implied appurtenant surface rights and obligations, with the surface estate in shares proportionate to the ownership of the surface estate, subject to existing liens for taxes or assessments." Env. § 15-1203(d)(2).

The Act defines a dormant mineral interest as one that "is unused for a period of 20 or more years preceding the commencement of termination of the mineral interest." Env. § 15-1203(a)(2)(i).  Additionally, notice of the mineral interest must not have been recorded during the period of 20 or more years preceding the commencement of the action to terminate the mineral interest.  Env. § 15-1203(a)(2)(ii).  Several actions constitute "use" of the mineral interest by an owner.  These include: (i) active mineral exploration or exploitation; (ii) payment of taxes on a separate assessment of the mineral interest; (iii) recordation of an instrument that evidences the continued existence of the mineral interest; and (iv) recordation of a judgment or decree that makes a specific reference to the mineral interest.[6]  Env. § 15-1203(c)(1).  An owner of a mineral interest

[5] "The action may be maintained, whether or not the owner of the severed mineral interest is an unknown or missing owner."  Env. § 15-1203(b)(2).  If the owner is missing or unknown, the Act provides that the circuit court may create a trust for a severed mineral interest and appoint a trustee for the mineral interest.  Env. § 15-1206.  This case involves known owners, so we need not discuss the trust mechanism.

[6] A tax assessor may value and tax mineral interests separately from the surface estate, as long as the valuation of the severed interests does not exceed the valuation of the property as a whole.  *See* Md. Code (1985, 2012 Repl. Vol.), Tax-Property Art.
(Continued . . . )

may record, at any time, a notice of intent to preserve the mineral interest or a part of a mineral interest. Env. § 15-1204(a)(1)

After a petition to terminate a dormant mineral interest has been filed, an owner of the mineral interest can still "record a late notice of intent to preserve the mineral interest as a condition of dismissal of the action, if the owner of the mineral interest pays the litigation expenses incurred by the surface owner of the real property that is subject to the mineral interest." Env. § 15-1205(b). However, the Act precludes an owner of a mineral interest that has been unused for a period of 40 years or more preceding the commencement of the action from filing a late notice of intent to preserve the mineral interest. Env. § 15-1205(c). The Standing Committee on Rules of Practice and Procedure adopted rules to aid the implementation of the Act.[7] *See* Md. Rules 12-701, *et seq*.

The Act's stated purpose "is to make uniform the law governing dormant mineral interests among the states." Env. § 15-1202(b). In that vein, Act was patterned on the Uniform Dormant Mineral Interests Act, which in turn was designed "to enable and

---

(. . . continued)
("Tax-Prop.") § 8-229; *Macht v. Dep't of Assessments of Baltimore City*, 266 Md. 602, 610 (1972).

[7] The Chair of the Rules Committee expressed concerns with the constitutionality of the mechanism terminating the rights of unknown or missing owners, mentioned *supra*, n.5, because of the Act's disparate treatment of known and unknown owners of mineral rights. *See* Draft minutes of the November 19, 2010 meeting of the Standing Committee on Rules of Practice and Procedure. As noted above, this case involves known owners, so we do not consider the Chair's concerns.

4

encourage marketability of real property and to mitigate the adverse effect of dormant mineral interests on the full use and development of both surface estate and mineral interests in real property." Uniform Law Commission, *Uniform Dormant Mineral Interests Acts* § 1(a). The uniform act also provides that it "shall be construed to effectuate its purpose to provide a means for termination of dormant mineral interests that impair marketability of real property." *Id.* § 1(b). The Attorney General, in a letter to Governor Martin O'Malley, dated May 3, 2010, approved of the constitutionality of the statute.

### B. The Sineses' Property

The Sineses are the surface owners of approximately twenty acres in Garrett County, and own an undivided one-half interest in the minerals beneath the property. On November 20, 2014, the Sineses filed a petition in the circuit court to terminate any dormant mineral rights mineral rights on their property. They identified the Harveys as potential owners of a portion of the mineral interest, as descendants of Henry B. Harvey who purchased a one-half interest in the minerals on the property, evidenced by a deed dated March 26, 1912 and recorded in the Garrett County land records.

On April 17, 2015, the parties filed cross-motions for summary judgment. The record showed that there had been no use of the mineral interest for at least the past 40 years. The Sineses asserted that because there was no use during the past 40 years, the court should enter an order terminating the dormant mineral rights, pursuant to Env. §§ 15-1203(a), -1205(c). The Harveys asserted that, among other things, the statute was facially unconstitutional because it abrogated vested rights. The Sineses opposed the

5

Harveys' motion for summary judgment. Neither party requested a hearing, and the record before the circuit court was sparse.

On May 12, 2015, the court entered an order, granting summary judgment for the Sineses, denying the Harveys' motion, and terminating the dormant mineral interest in the property. The Harveys appealed to this Court on June 11, 2015.

**DISCUSSION**

Whether a circuit court's grant of summary judgment is proper in a particular case is a question of law, subject to a non-deferential review on appeal. *Charles Cnty. Comm'rs v. Johnson,* 393 Md. 248, 263 (2006). In reviewing a grant of summary judgment, we review independently the record to determine whether the parties generated a dispute of material fact and, if not, whether the prevailing party was entitled to a judgment as a matter of law. *Muskin v. State Dept. of Assessments & Taxation*, 422 Md. 544, 554 (2011) (citing *Charles Cnty. Comm'rs,* 393 Md. at 263). We review the record in the light most favorable to the non-moving party and construe any reasonable inferences that may be drawn from the well-pled facts against the moving party. *Id.* Here, neither party has argued that any of the facts are in dispute; therefore it was proper for the trial court to make a decision on the parties' motions for summary judgment. *See id.*

The Harveys argue that the Act violates Article 24 of the Maryland Declaration of Rights and Article III, Section 40 of the Maryland Constitution because it retroactively impairs vested rights and takes property without just compensation under the Court of Appeals's decisions in two cases: *Muskin v. State Dep't of Assessments & Taxation*, 422

6

Md. 544 (2011) and *Scharf v. Tasker*, 73 Md. 378 (1891). The Sineses assert that the cases are distinguishable and that the statute is constitutional because it does not impermissibly divest the mineral interest owner of a vested right.

In addressing a claim involving the constitutionality of a statute, we begin "with a presumption that the statute is constitutional." *Beattie v. State*, 216 Md. App. 667, 678 (2014) (citing *Walker v. State,* 432 Md. 587, 626 (2013)). We are reluctant to find a statute unconstitutional if, "by any construction, it can be sustained." *Galloway v. State*, 365 Md. 599, 611 (2001) (quoting *Beauchamp v. Somerset County,* 256 Md. 541, 547 (1970)). The appellant bears the burden of overcoming this presumption and establishing the statute's unconstitutionality. *Beattie*, 216 Md. App. at 678. We undertake an "independent constitutional appraisal" to determine whether a constitutional right has been infringed. *Watkins v. Sec'y, Dept. of Pub. Safety & Corr. Services*, 377 Md. 34, 46 (2003) (citing *Crosby v. State*, 366 Md. 518, 526 (2001)).

In light of the posture of and contentions in this case, the Harveys' arguments are tantamount to a facial challenge to the Act. However, they would gain nothing if they contested the constitutionality of the Act as applied to their specific circumstances, considering the protracted time that this property was neither used nor taxed. The Harveys have not asserted their rights since the property was acquired more than 100 years ago in 1912.[8]

---

[8] However, we express no view on the constitutionality of the Act as applied to a situation where the appellant had made a more recent use of a mineral interest.

7

The Court of Appeals observed in *Muskin v. State Dep't of Assessments &*

*Taxation*:

> Together, Maryland's Declaration of Rights and Constitution prohibit the retrospective reach of statutes that would have the effect of abrogating vested rights. *Dua v. Comcast Cable of Md. Inc.,* 370 Md. 604, 630 n. 9, 805 A.2d 1061, 1076 n. 9 (2002). Article 24 of the Maryland Declaration of Rights, guaranteeing due process of law, and Article III, § 40 of the Maryland Constitution,[9] prohibiting governmental taking of property without just compensation, have been shown, through a long line of Maryland cases, to prohibit the retrospective reach of statutes that would result in the taking of vested property rights. *See Dua,* 370 Md. at 604, 805 A.2d at 1061 and cases therein.

422 Md. 544, 555-56 (2011). The Maryland Declaration of Rights and the Maryland

Constitution are generally read in concert with their federal constitutional counterparts,

and cases interpreting federal constitutional provisions are treated as "persuasive

authority by a Maryland court interpreting the Maryland Declaration of Rights and

Constitution." *Id.* (citing *Dua,* 370 Md. at 604).

## A. Retrospectivity

We first consider whether the statute operates retrospectively. "[A] statute does

not operate 'retrospectively' merely because it is applied in a case arising from conduct

---

[9] Article 24 of the Maryland Declaration of Rights states: "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privilege, or outlawed, or exiled, or in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

Article III, § 40 of the Maryland Constitution states: "The General Assembly shall enact no Law authorizing private property, to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a Jury, being first paid or tendered to the party entitled to such compensation."

antedating the statute's enactment. . . ." *John Deere Const. & Forestry Co. v. Reliable Tractor, Inc.*, 406 Md. 139, 147 (2008) (quoting *Landgraf v. USI Film Products*, 511 U.S. 244, 269 (1994)) (Internal quotation marks omitted). Moreover, a statute "is not made retroactive merely because it draws upon antecedent facts for its operation." *Landgraf*, 511 U.S. at 297 n.24 (quoting *Cox v. Hart,* 260 U.S. 427, 435 (1922)). In evaluating retrospectivity, we consider three factors, "fair notice, reasonable reliance, and settled expectations," to determine "the nature and extent of the change in law and the degree of connection between the operation of the new rule and a relevant past event." *John Deere Const.*, 406 Md. at 147 (quoting *Landgraf*, 511 U.S. at 270) (Internal quotation marks omitted).

In *Muskin*, the Court of Appeals considered the constitutionality of a ground rent statute, which provided that, upon the failure of a ground rent owner to register this interest with the State, that interest in the land was automatically extinguished and transferred to the tenant. The Court concluded that the statute at issue in *Muskin* satisfied fair notice by providing a reasonable time period—two years—between its enactment and the registration deadline. 422 Md. at 558. Although the statute satisfied fair notice, it nevertheless operated retrospectively because it impermissibly impacted the reasonable reliance and settled expectations of ground rent owners. *Id.*

Because of the nature of a ground rent lease—where the fee simple owner (the ground rent owner) of a property received an annual or semi-annual payment (ground rent) and retained the right to re-enter the property and terminate the lease if the leaseholder failed to pay—the statute infringed upon the owners' reasonable reliance and

9

settled expectations. The Court noted that "[g]round rent owners rel[ied] reasonably on the future income from ground rents or the ability to sell the fee simple interest on the open market or in the future, if necessary." *Muskin*, 422 Md. at 550, 558 (citing *Kolker v. Biggs,* 203 Md. 137, 141 (1953)). Moreover, the statute did not provide for additional remedies for the ground rent owner, such as an opportunity for a hearing or an appeal process. The Court posited a valid, alternative statutory approach in which the failure to register before a fixed deadline triggered restrictions on the property interest short of a total extinguishment of rights. *Id.* at 559.

Here, the Act provides fair notice. Although not quite the two-year grace period in *Muskin*, it provides for a similar grace period of one and a half years—the statute was enacted on May 4, 2010 and allowed the filing of a petition only on or after October 1, 2011.[10] *See John Deere Const.*, 406 Md. at 148 (Parties are presumed to be aware of the actions of the General Assembly). "The Maryland Constitution requires that a plaintiff must have a reasonable period of time, after the enactment of the new statute, to bring the cause of action which existed under prior law." *Dua*, 370 Md. at 633; *see* Env. § 15-1204(a) ("An owner of a mineral interest may record, *at any time*, a notice of intent to preserve the mineral interest or a part of a mineral interest") (Emphasis added). In this

---

[10] Similar legislation was introduced in 2009 (S.B. 775), and sections of the Act were amended in 2012 (2012 Laws, ch. 370, H.B. 402). Thus, by virtue of the fact that the General Assembly was considering regulation of dormant mineral interests as early as 2009, and the fact that legislation concerning this issue was passed again in 2012, the Harveys were doubly on notice that efforts were being undertaken in Annapolis, which had the potential to affect their rights.

case, the Sineses did not file a petition until November 20, 2014, more than four years after the law went into effect—providing the Harveys with a reasonable period of time to exercise their rights.

In contrast to *Muskin*, however, the Act does not impermissibly infringe the reasonable reliance and settled expectations of mineral interest owners. The owners subject to the act, by their very definition as owners of *dormant* mineral interests, are not relying on rents or income from the property. They have not made use of the interests for at least twenty, and in this case well beyond 40 years. In fact, the conveyance was made in 1912, over 102 years before this action was initiated, and there was no evidence that the mineral interest had ever been exploited.

We also note that a mineral interest owner may "use" the interest by paying taxes on it. "If minerals and mineral rights are owned separately from the land in which they are located, the supervisor may assess the minerals and mineral rights separately from the land." Tax-Prop. § 8-229. The owner of the mineral rights can be assessed tax on its value even if the minerals are not then being exploited. *See Macht*, *supra*, 266 Md. at 608-09 (citing *Weil v. Supervisor of Assessments*, 266 Md. 238 (1972); *Sears Roebuck v. State Tax Comm.*, 214 Md. 550, 557-558 (1957)) (noting that "situations may be postulated where a fair and equitable valuation can only be achieved by the use of this mechanism. It has long been established that assessors have reasonable latitude in selecting a method of valuation, so long as they arrive at the 'full cash value'"). There was no evidence that taxes had ever been paid on the Harveys' mineral interest.

11

The Act is also distinguishable from the legislation at issue in *Muskin,* because the interest is not automatically extinguished. The General Assembly, in this case, did not provide for unavoidable reversion of a mineral interest if the owner failed to register the interest by a certain date. Instead, it is the surface owner who initiates the process by filing an action in the circuit court. The owner of a mineral interest can, of course, use the interest at any time before the petition is filed by exploring for minerals or even paying taxes on the interest. Env. § 15-1203(c)(1). Alternatively, the owner can record a notice of intent to preserve the interest. Env. § 15-1204(a). Here, the Harveys had more than forty years to take some action to protect their property rights.

Unlike in *Muskin,* the Maryland Rules provide that the circuit court can hold a hearing on the petition, *see* Md. Rule 12-704(d), and a dominant mineral interest owner can appeal a court decision terminating his or her rights. Additionally, the Act provides remedies to the mineral owners who desire to retain their interests after a petition has been filed—if there has been a use of the mineral interest within forty years but later than twenty years, the mineral owner may file a late notice of intent to use. Env. § 15-1205.

In consideration of "the nature and extent of the change in law and the degree of connection between the operation of the [Act,]" its notice and procedural safeguards, and the continued non-use of the mineral interest, *see John Deere Const.*, 406 Md. at 147, we conclude that the Act does not operate retrospectively to impair vested rights.

**B. Takings and Vested Rights**

Even if we had concluded that statute operated retrospectively, we would also conclude that it did not operate to impermissibly impair vested rights. Vested rights

include "that which is regarded as a property right under Maryland property law." *Muskin*, 422 Md. at 560 (quoting *Dua*, 370 Md. at 631) (Internal quotation marks omitted). The Act defines a "mineral interest" as "an interest in a mineral estate, however created and regardless of form, whether absolute or fractional, divided or undivided, corporeal or incorporeal, including a fee simple or any lesser interest or any kind of royalty, production payment, executive right, nonexecutive right, leasehold, or lien in minerals, regardless of character." Env. § 15-1201(c). From this, we conclude that a severed mineral interest constitutes a property right, and is, thus, a vested right.

In *Safe Deposit & Trust Co. v. Marburg*, the Court of Appeals considered the constitutionality of a statute that terminated a vested property right if the owner failed to exercise his or her rights for twenty years, as required under the statute. 110 Md. 410 (1909). Somewhat similar to the Dormant Mineral Interests Act, in *Marburg*, if a ground rent owner failed to collect rent for twenty years, the statute specified that the owner's interest would be extinguished and fee simple would vest in the tenant of the property through adverse possession. *Id.* at 412. The act imposed new restrictions on a vested property right and potentially resulted in a transfer of property from the ground rent owner to the tenant, but only if the ground rent owner failed to exercise his or her rights. The Court upheld the statute, stating that the General Assembly has the power "to pass laws which may result in vesting good titles in those holding lands by adverse possession—provided, of course, the former owners have a reasonable time after the passage of such laws within which to assert their rights." *Id.* at 414. The statute did not effect an unconstitutional impairment of vested rights or taking of property. *See id.*

13

In *Muskin*, the Court specifically contrasted the ground rent statute, in which owners were actively collecting rents, with a situation where the vested interest had gone unused for a long period of time. The Court stated:

> Adverse possession doctrine existed historically to encourage beneficial use of properties and an orderly title system. [The statute] does not differentiate between ground rent owners who abandon their interests in the property and active, responsible ground rent owners, but rather strictly between registrants under an entirely new scheme and non-registrants.

422 Md. at 562.

The authority relied upon by the Harveys, *Scharf v. Tasker*, 73 Md. 378 (1891), is inapposite. In that case, the General Assembly attempted to assess tax on tracts of land, known as military lots, given to soldiers at the end of the Revolutionary War. 73 Md. at 382. By 1890, many of the owners could not be found, and the legislature passed a law "to compel these unknown owners to establish their title so that the property might be placed upon the assessment books of Allegany and Garrett counties." *Id.* The Court held that:

> the legislature exceeded the limits of its authority when it undertook, in the same section, to forfeit the property—the title and estate—of all unknown owners upon their failure to produce, within the time designated, the evidence of their title. It needs no argument and no citation of authority to show that the title of the unknown owners of these lots cannot be forfeited without due process of law; and that such legislation as this is far from having even the semblance of due process of law.

*Id.* Several factors distinguish *Scharf* from this case. First, the owners of the land at issue were unknown, and, thus, it was difficult, if not impossible, to ensure that notice of the requirement to establish title was provided. Second, the 1890 law created a universal registration requirement and transferred the ownership of the property to the State upon

14

the failure of the owner to register by a certain deadline, similar to the ground rent law struck down by the Court in *Muskin*.[11]

As discussed above, the Act at issue provides fair notice by giving dormant mineral interest holders a reasonable time after the passage of the law to assert their rights. Here, Harveys had a large window of opportunity in which they could have put the property to use or secured their rights by filing a notice of intent to use. The Act also does not automatically terminate the rights of an interest holder, instead, requiring a surface owner to initiate an action at some indefinite time. Although not identical to adverse possession, the process created by the Legislature is in a similar vein. Similar to the provision found to be constitutional in *Marburg*, the Act here allows a person to, after twenty years of neglect, file a petition to, essentially, quiet title and allow the land and minerals beneath it to be put to beneficial use. Env. § 15-1203; *see Marburg*, 110 Md. at 414. For these reasons, we hold that the Act satisfies due process as required by Article 24 of the Maryland Declaration of Rights.

We note that similar statutes in other states have been found to be constitutional under both federal and state constitutions. *See, e.g.*, *Texaco, Inc. v. Short*, 454 U.S. 516, 526 (1982) ("[T]his Court has recognized that States have the power to permit unused or abandoned interests in property to revert to another after the passage of time"); *Short v. Texaco, Inc.*, 406 N.E.2d 625 (Ind. 1980), *aff'd,* 454 U.S. 516 (1982) (upheld under state constitution and federal constitution); *Van Slooten v. Larsen*, 299 N.W.2d 704 (Mich.

---

[11] In *Muskin*, the ownership of the land was transferred to the tenant.

1980) (same); *Contos v. Herbst*, 278 N.W.2d 732 (Minn. 1979) (same); *Love v. Lynchburg Nat. Bank & Trust Co.*, 140 S.E.2d 650 (Va. 1965) (upheld under state constitution).

Moreover, the states that have found dormant mineral interests acts to be unconstitutional were considering statutory language that differed from the language of the Maryland act. *See, e.g., Wilson v. Bishop*, 412 N.E.2d 522, 523 (Ill. 1980); *Wheelock v. Heath*, 272 N.W.2d 768 (Neb. 1978); *Chicago & N.W. Transp. Co. v. Pedersen*, 259 N.W.2d 316, 317 (Wis. 1977). The courts in these cases all considered statutes in which the mineral interest *automatically* reverted to surface holder unless the mineral interest owner registered the interest with the state within the statutory period, a scenario remarkably similar to the law found to be unconstitutional by the Court in *Muskin*, and different from the Act we now consider. Another case declined to give a dormant mineral act retrospective effect because the statute the failed to provide for a method for owners to effectively preserve their interests via a grace period or a notice of intent to use. *See Trustees of Tufts Coll. v. Triple R. Ranch, Inc.*, 275 So. 2d 521 (Fla. 1973).

Regarding the Harveys' contention that the statute constitutes a taking without compensation under Article III, Section 40 of the Maryland Constitution, the Court has noted that "the Legislature, under the State's police power, has some ability to regulate and restrict the rights of private property owners without providing just compensation." *Muskin*, 422 Md. at 565 (2011) (citing *Stevens v. Salisbury*, 240 Md. 556, 563 (1965)) (giving as examples taxation and zoning requirements). Incarnations of this power include doctrines such as adverse possession, abandonment, and escheat. *See* Md. Code

(1974, 2013 Repl. Vol.), Courts & Jud. Proc. Art. § 5-103(a) (adverse possession); Md. Code (1974, 2011 Repl. Vol.), Real Prop. Art. § 14-108 (quieting title to property), Md. Code (1975, 2013 Repl. Vol.), Commercial Law Art. ("C.L.") § 17-101, *et seq.* (escheat and abandoned property); Md. Code (1974, 2015 Repl. Vol.), Est. & Trusts Art. § 3-105 (escheat of intestate property). For example, with regard to a savings account in Maryland, the funds within the account are presumed abandoned if within the three prior years, the owner has not, among other things, increased or decreased the amount in the account or engaged in any other transaction with the banking organization. C.L. § 17-301(a)(1).

The Maryland Dormant Mineral Interests Act is akin to these legislative provisions.[12] In enacting the statute, the General Assembly created yet another vehicle to ensure the productive use of property in Maryland. The statute does not divest property from a private owner and transfer the property to the State. Instead, it allows a private party to maintain an action to clear title to disused property to allow the most productive use of the estate. Accepting appellants' argument would allow minerals to go unused in perpetuity.

Moreover, in this case, the Sineses and the Harveys each own an undivided, one-half interest in the mineral estate. Divided ownership presents a barrier to productive mineral use. Legal scholar Ernest Smith observed that "[e]ach division of the mineral fee

---

[12] The doctrine of adverse possession is not directly applicable to the mineral interest in this case because the mineral interest has been severed from the surface estate, and, accordingly, one would need to possess the minerals to invoke the doctrine. *See* 53A Am. Jur. 2d Mines and Minerals § 160 (2006, 2016 Supp.).

renders its development more difficult" because of the increased opportunity for disagreement among joint owners, and the possibility that a mineral interest will descend to an absent owner or a "minor[] or other person[] under a legal disability to contract[.]" Smith, *supra* n.2, 43 Tex. L. Rev. at 130. Further, "the uncertainty as to the expenses which a successful oil and gas producer may deduct in accounting for profits to a co[owner]" who is not aware of or who has not agreed to the plan of development can prevent development because "if the drilling operations are unsuccessful, the developing co[owner] must bear the entire expense himself. If they do result in production, he [or she] can recoup the nonparticipating co-owner's share of expenses only from that co-owner's share of production, and, even then, some of these expenses may not be recoverable." *Id.* at 131-32. These considerations make a co-owner of a mineral interest, like the Sineses in this case, reluctant to develop the resources under their property for fear of shouldering the entirety of the expenses for potentially little return.

Dormant mineral interests acts present a solution to this problem. *See id.* at 151-61, 164-66. The General Assembly apparently understood the ramifications of dormant mineral interests, and enacted Env. § 15-1201, *et seq.* to address the problems noted above. For all of these reasons, we conclude that the Maryland Dormant Mineral Interests Act does not operate retrospectively to impair vested rights and does not take property without just compensation.

> **JUDGMENT OF THE CIRCUIT COURT FOR GARRETT COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**